Henry BOWIE, Appellant,

v.

G. P. PLASTICS, Appellee.

No. 5218.

Court of Civil Appeals of Texas, Eastland.

Aug. 31, 1978.

Rehearing Denied Oct. 5, 1978.

Alan H. Cooper, Kasmir, Willingham & Krage, Dallas, for appellant.

Arlen D. Bynum, Bradshaw & Bynum, Dallas, for appellee.

RALEIGH BROWN, Justice.

This is an occupier-invitee negligence case. Henry Bowie, a truck driver, sued G. P. Plastics Corporation, the occupier of premises where Bowie made deliveries, for personal injuries sustained by Bowie when a metal dockboard on Plastics' premises allegedly rose up and threw him onto the concrete dock. Employer's Mutual Liability Insurance Company of Wisconsin intervened, claiming subrogation rights.

The jury found (1) that the dockboard was in a dangerous condition; (2) that Plastics knew or should have known of the condition; (3) that Plastics failed to give Bowie an adequate warning of the condition; (4) that such was negligence; and, (5) the proximate cause of Bowie's damages which totaled $39,000. The jury denied Plastics' defensive theories. Plastics' motion for judgment non obstante veredicto was granted from which only Bowie appeals. We reverse and render.

As stated by the court in *Douglass v. Panama, Inc.,* 504 S.W.2d 776 (Tex.1974):

" . . . To sustain the action of the trial court in granting the motion for judgment notwithstanding the verdict, it

must be determined that there is no evidence upon which the jury could have made the findings relied upon. In acting on the motion, all testimony must be considered in a light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in that party's favor. *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547 (1962); *Burt v. Lochausen,* 151 Tex. 289, 249 S.W.2d 194 (1952) . . . "

On June 18, 1973, while unloading his truck in the course of making a delivery at Plastics' premises, Bowie was injured when a truck-actuated dockboard rose up and struck him in the right shin, throwing him over onto the concrete dock where he landed on his right knee. As a result of this injury, Bowie developed traumatic chondromalacia of the right knee and thighbone.

Texas has adopted Section 343 of the Restatement (Second) of Torts in occupier-invitee cases. As stated by the court in *Adam Dante Corporation v. Sharpe,* 483 S.W.2d 452 (Tex.1972):

"This court has often measured the duty which an occupier of premises owes to an invitee. *Guidry v. Neches Butane Products Co.,* 476 S.W.2d 666 (Tex.1972); *City of Beaumont v. Graham,* 441 S.W.2d 829 (Tex.1969); *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368 (Tex.1963); *McKee v. Patterson,* 153 Tex. 517, 271 S.W.2d 391 (1954). The duty is that which is summarized in Restatement (Second) of Torts § 343 (1965):

§ 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

The occupier is under the further duty to exercise reasonable care in inspecting the premises to discover any latent defects and to make safe any defects or to give an adequate warning. Restatement (Second) of Torts § 343, Comment b (1965)."

See also *Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex.1975).

John Lloyd, an expert witness, gave extensive testimony concerning the operation of the dockboard. He testified that he had inspected the dockboard in May, 1976. The dockboard was a truck-actuated, biased-upward counterbalanced unit. "Biased-upward" means the ramp portion stays above the dock level until a truck backs against it and causes the ramp to lower down into the bed of the truck. The dockboard is held in an "up" position when not in use by a weight called a "counterbalance" located beneath the ramp. Four photographs admitted into evidence showed the dockboard from various angles.

Lloyd testified that when a truck backed up to such a dockboard, it depressed two "actuating" arms which protrude out on either side of the dockplate. This pulls the dockboard ramp down onto the bed of the truck and holds it there firmly until the truck pulls away from the dock. A system of rods, arms and springs when activated generate the tension necessary to overcome the weight to the counterbalance and hold the dockboard firmly on the bed of the truck. When the truck pulls away from the dock, the tension on springs beneath the dockboard is released and the dockboard rises up to its original position.

Bowie's testimony was that he backed his truck up to the dock on the day of the accident using the outside rear view mirrors located on both sides of the truck cab. He entered the dock area through a separate entrance and presented his delivery bill to C. S. Savage, the warehouse supervisor. Bowie returned to his truck, opened its rear door, entered the trailer and picked up a small carton. There were two men in the

dock area, one of whom was standing on the dockboard looking into the back of the truck. As Bowie began to walk out of the truck toward the dockboard, the man stepped off of it. The dockboard rose up and struck Bowie on the right shin, throwing him onto the concrete dock. After he got up, Bowie noticed that the dockboard was raised about six inches from the bed of the truck.

Savage, the warehouse supervisor, testified that one of the two men standing in the vicinity of the accident was an employee of Plastics named Milton. His duties included helping truck drivers load and unload trucks. The other man was an employee of Brass Craft. Neither Milton nor the Brass Craft employee testified at the trial.

Savage also testified:

"QUESTION: 'Do you recall an accident occurring on one of those loading docks during June of 1973 that involved the Plaintiff, Henry Bowie, who's sitting here?'

ANSWER: 'I do.'

QUESTION: 'Did you see that accident occur?'

ANSWER: 'I did not.'

QUESTION: 'You say you didn't see this accident. When was the first time you knew about the accident, the one involving Mr. Bowie?'

ANSWER: 'I guess it would be when I heard the commotion which would have been when the dock plate actually come back up.'

QUESTION: 'Okay, sir. What did you hear exactly that brought this to your attention, you say the commotion.'

ANSWER: 'Well, this is the way—you want me to go ahead and tell you what I seen or what I heard?'

QUESTION: 'Yes, sir.'

ANSWER: 'All right. I was preparing my shipments and orders at that particular time. The best I remember he was delivering a shipment at this time.'

QUESTION: 'Yes, sir. Were you at your desk?'

ANSWER: 'I was at my desk.'

QUESTION: 'All right, sir.'

ANSWER: 'And it was a boy. I don't know his name. He was—I think he was, foreman at Brass Craft.'

QUESTION: 'This boy from Brass Craft was not an employee of G. P. Plastics?'

ANSWER: 'Right.'

QUESTION: 'All right, and you don't know his name?'

ANSWER: 'No.'

QUESTION: 'All right.'

ANSWER: 'He was standing on the dock at that particular time holding it down.'

QUESTION: 'All right. Holding it down. Go on.'

ANSWER: 'Now, this is what actually my employee and this boy said.'

QUESTION: 'Who is your employee now?'

ANSWER: 'Milton.'

QUESTION: 'Now, where was he located?'

ANSWER: 'He was at the dock.'

QUESTION: 'Was he on the dock?'

ANSWER: 'No, he was probably filling orders around that area.'

QUESTION: 'All right, sir. And then you saw this fellow from Brass Craft standing on the dock and what happened next?'

ANSWER: 'No. I didn't see him standing on the dock. They said he was standing on the dock holding it down.'

QUESTION: 'All right. Who told you that?'

ANSWER: 'Milton and both this boy.'

QUESTION: 'Was this after the accident that they told you this?'

ANSWER: 'No. He stepped off the dock momentarily and that's when it rose and that's when the accident occurred.'"

■ Bowie contends that the court erred in holding that there is no evidence that the dockplate was in a dangerous condition at the time of the accident and that there is no evidence Plastics knew or should have known of the dangerous condition. We agree.

The court in *Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex.1975) said:

" . . . Whether a condition constitutes a danger is a function of reasonableness. That is, if the ordinarily prudent man could foresee that harm was a likely result of a condition, then it is a danger. 2 F. Harper & F. James, The Law of Torts § 27.1 at 1431 (1956); W. Prosser, The Law of Torts § 61, at 385 (4th ed. 1971). In *Seideneck v. Cal Bayreuther Associates,* supra [451 S.W.2d 752 (Tex.)], this Court stated:

As might be expected with a matter involving the 'reasonable man' concept, there seems to be no definitive, objective test which may be applied to determine whether a condition presents an unreasonable risk of harm. Obviously, evidence of other falls attributable to the same condition, or evidence of defectiveness of the rug, floor, or other condition causing the fall would be probative, although not conclusive, on the question."

The jury absolved Bowie of any negligence with respect to the activation of the dockboard. Lloyd's testimony regarding the operation of the device was to the effect that the dockboard would hold firmly on the bed of the truck until the truck pulled away from the dock. Bowie testified that the dockboard rose up and caused his fall. The jury could reasonably infer the dockboard's operation was defective on June 18, 1973, and such condition presented an unreasonable risk of harm to Bowie. *Coffee v. F. W. Woolworth Co.,* 536 S.W.2d 539 (Tex.1976).

On the issue of Plastics' knowledge of the dangerous condition, two witnesses gave crucial testimony.

Johnny Yeatman, a former employee of Plastics, testified:

"Q 'Did you formerly work for G. P. Plastics Corporation?'
A 'Yes, sir.'
Q 'And where did you work for G. P. Plastics Corporation?'
A 'Shipping and receiving.'
Q 'Did you work on the dock?'
A 'Yes, sir.' "
"Q 'The question is: Were you familiar with the condition of the dock plate nearest Regal Row prior to June of 1973?'
A 'Yes, sir.'
Q 'What was the condition of that dock plate prior to June of 1973?'
A 'Unsafe, sir.'
Q 'In what regard.'
A 'You would step on it sometimes and it would give away under you. It should have had a latch there or something to hold it up. You could step on it with a foot and it would fall when it shouldn't have.'
Q 'Were the springs underneath dock plate number one sometimes disconnected while you worked there?'
A 'Yes, sir.'
Q 'Prior to June of 1973?'
A 'Yes, sir.' "

"CROSS EXAMINATION

Q 'When did you work for G. P. Plastics?'
A 'Oh, August, a little over five years ago, sir.'
Q 'Five years ago?'
A 'Yes, sir.'
Q 'When did you leave their employment?'
A 'August five years ago.'
Q 'That would be August of 1972?'
A 'Yes, sir.'
Q 'And what you're testifying to happened before August of 1972?'
A 'Yes, sir.'
Q 'You don't know what condition the dock plates were August and June of 1973, do you?'
A 'No, sir, not after I left.' "

Savage testified although he did not see the accident occur, his first knowledge of the accident was when he "heard the commotion which would have been when the dock plate actually come back up".

█ According to Savage's testimony, as previously set forth, Milton, Plastics' employee, and the Brass Craft employee both told him that the Brass Craft employee was "standing on the dock at that particular time holding it down" and that he "stepped

off momentarily and that's when it rose and that's when the accident occurred." This testimony is not excluded as hearsay and such statements are admissible to show actual knowledge of the dockboard condition. *McWilliams v. Snap-Pac Corporation,* 476 S.W.2d 941 (Tex.Civ.App.—Houston (1st Dist.) 1971, writ ref'd n. r. e.); *Okan Pipeline Company v. Eiland,* 394 S.W.2d 548 (Tex.Civ.App.—Eastland 1965, writ ref'd n. r. e.); McCormick & Ray, Texas Evidence § 799 (2nd ed. 1956).

The jury could infer from this testimony that Plastics, through its employee, Milton, had actual knowledge of the dangerous condition of the dockboard that required holding it down to keep it from rising up.

Plastics argues that Bowie was required to show that the alleged defective condition existed for such a length of time that would give it, the occupier of the premises, a reasonable opportunity to discover it. We disagree. A distinction is drawn when an occupier has actual knowledge of the condition. In the case at bar, the jury properly found that the dockboard was in a dangerous condition and Plastics had actual notice of such condition. This distinguishes the instant case from the recent case of *Overstreet v. Gibson Product Co., Inc. of Del Rio,* 558 S.W.2d 58 (Tex.Civ. App.—San Antonio 1977, writ ref'd n. r. e.) wherein the defendant had no actual knowledge of the condition and the court held "the question of liability depends on whether or not it may reasonably be inferred that the condition existed for such length of time as would give defendant a reasonable opportunity to discover it. *Coffee v. F. W. Woolworth Co.,* 536 S.W.2d 539, 544 (Tex. 1976)."

As stated in *Overstreet,* supra:

"An occupier of premises is liable for physical injury to his business guests or invitees resulting from a condition on the premises only if the following three conditions are met: (1) *The occupant knows of, or by the exercise of reasonable care should have discovered,* the condition and should realize that it involves an unreasonable risk of harm to such guests. (2) He should expect that his patrons will not

discover or realize the danger, or will fail to protect themselves against it. (3) He fails to exercise reasonable care to protect his business guests against such danger. *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536–37 (Tex.1975); *Adam Dante Corp. v. Sharpe,* 483 S.W.2d 452, 454–55; Tex. Restatement (Second) of Torts § 343 (1965)." (Emphasis ours)

Since Plastics had actual knowledge of the condition, the length of time of its existence is immaterial.

Having considered the evidence in its most favorable light in support of Bowie's position, we hold the trial court erred in concluding that there was no evidence the dockboard was in a dangerous condition and Plastics knew of the condition. Also there is evidence of probative force to support the jury's findings of Plastics' failure to give Bowie an adequate warning of the condition, that such was negligence and the proximate cause of Bowie's injury. *Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263 (Tex.1974).

We reverse the judgment of the trial court and render judgment for Bowie.