**Alfred Wayne MARSHBANK, Appellant,**

v.

**AUSTIN BRIDGE COMPANY, Nueces County Navigation District No. 1, and Pressure Concrete Construction Company, Appellees.**

No. 13–82–237–CV.

Court of Appeals of Texas, Corpus Christi.

March 8, 1984.

Rehearing Denied March 29, 1984.

Ken Dahlberg, Wood & Burney, Corpus Christi, for appellant.

Ted Roberts, Meredith & Donnell, Steve T. Hastings, Guy Allison, Ronald B. Brin, Brin & Brin, Corpus Christi, for appellees.

Before NYE, C.J., and UTTER and YOUNG, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a take nothing judgment rendered against appellant in favor of all appellees. Appellant brought suit against a premises owner (Nueces County Navigation District No. 1), a contractor (Austin Bridge Company) and a

sub-contractor (Pressure Concrete Construction Company) for personal injuries which he sustained while conducting his duties as boarding agent for Boyd-Campbell, Inc., a steamship agent/stevedore company. In connection with appellant's suit, appellee Austin Bridge Company sought contractual indemnity from co-appellee Pressure Concrete Construction Company, which was denied by the trial court. Austin Bridge Company attacks this denial in its cross-appeal against Pressure Concrete Construction Company.

The issues presented in the appeal are: (1) whether appellant held the status of "invitee" or "licensee" as to any or all appellees; (2) whether there was a fatal and irreconcilable conflict among certain jury answers; (3) whether the evidence was factually insufficient to support jury findings to certain special issues; and, (4) whether the trial court improperly submitted an explanatory instruction regarding the phrase "dangerous condition." The issue presented in the cross-appeal is whether appellee Austin Bridge Company must perfect its own independent appeal in order to now complain of the judgment relative to co-appellee Pressure Concrete Construction Company. We affirm the judgment of the trial court.

The Nueces County Navigation District No. 1 ("Navigation District"), the owner of Dock No. 9 at the Port of Corpus Christi, contracted with Austin Bridge Company ("Austin Bridge") to perform rehabilitation work to Dock No. 9. As a part of the rehabilitation work, Austin Bridge was to repair the underlying structural supports for the dock which required the application of gunite or concrete. To facilitate the application of gunite or concrete to the underlying supports of the dock, holes were cut through the dock by either Austin Bridge or Pressure Concrete Construction Company ("Pressure Concrete"), a subcontractor employed by Austin Bridge to apply the gunite or concrete. The holes, when not in use, were to be covered by steel plate or wooden covers. There was testimony presented at trial that covers were prepared for the holes and that the exposed holes were customarily covered every day.

Appellant was a boarding agent for Boyd-Campbell, Inc., a steamship agent/stevedore company, who acted as agent for its client-shipping companies whenever such client's ships were in port. During the afternoon of November 12, 1979, in the performance of his duties, appellant went to Dock No. 9 where the ship "Thomas Nelson" was berthed. As appellant began to leave the area where the ship was docked, he turned around, took a few steps backwards and/or sideways and stepped into a hole in the dock and sustained injuries to his left knee. Appellant, by his deposition, admitted that he was not watching where he was going and that he knew construction was in progress in the area but that he did not know exactly what sort of construction was involved. Appellant further admitted in his deposition that "It was an open and it was an obvious hole."

In his first through fourth and seventh points of error, appellant asserts that the trial court erred in the submission of its charge to the jury based upon the legal theory that appellant held the status of "licensee" as to each appellee. Appellant argues that the charge should have been submitted on the basis that appellant held the status of "invitee" and not "licensee" as to each appellee.

We deem it appropriate to set forth the standards governing each of the two statutes, "licensee" and "invitee," in a premises liability case. If a plaintiff is an invitee, the premises owner or occupier has a duty to keep the premises in a reasonably safe condition and to inspect the premises to discover any latent defects and to make safe any defect or give adequate warning. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex.1983); *Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452 (Tex.1972); *Rowland v. City of Corpus Christi*, 620 S.W.2d 930 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). If, on the other hand, the plaintiff is a licensee, then the premises owner or occupier owes the plain-

tiff a duty to not injure him willfully, wantonly, or through gross negligence; except, when the owner or occupier has knowledge of a dangerous condition and the licensee does not, a duty is owed on the part of the owner or occupier to either warn or to make the condition reasonably safe. *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561 (Tex.1976); *State v. Tennison*, 509 S.W.2d 560 (Tex.1974).

■ Implicit in the case law dealing with premises liability is the requirement that, in order to be entitled to the status of either "licensee" or "invitee" in ´a suit based upon premises liability theory, the person sued must be the "owner or occupier" of the premises upon which the plaintiff was injured. This proposition is made clear in the case law which holds that, in such an action, a general denial has the effect of joining issue on a defendant's ownership or occupancy as alleged by the plaintiff and casts the burden of establishing such fact on the plaintiff. *McLellan Stores Co. v. Lindsey*, 157 S.W.2d 1013 (Tex.Civ.App.—Eastland 1941, writ ref'd w.o.m.); *See West v. Johnson*, 129 S.W.2d 811 (Tex.Civ.App.—Fort Worth 1939, writ ref'd.).

Restatement (Second) of Torts § 328 E (1974) defines "owner or occupier" in terms of "possessor":

A possessor of land is

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under clauses (a) and (b).

In the instant case, it is undisputed that the Navigation District was the owner, occupier and possessor of the premises. Since the Navigation District was undisputedly the owner, occupier and possessor of the premises and a governmental unit, the Navigation District's duty owed to appellant for alleged premises defects is governed by the Texas Tort Claims Act, TEX. REV.CIV.STAT.ANN. art. 6252–19 § 18(b) (Vernon 1970), which provides, in pertinent part, that:

As to premises defects the unit of government shall owe to any claimant only the duty owed by private persons to a licensee on private property *unless payment has been made by the claimant* for the use of the premises. (emphasis added)

Appellant, in his brief on appeal, recognizes Art. 6252–19 § 18(b) as he argues that, under the facts and circumstances of the case, he qualifies as an invitee by reason of the above emphasized, quoted exception. Appellant contends (1) that the fact that appellant is an employee of a company doing business with the Navigation District places him in the category of an invitee on such premises, and (2) that appellant was there by the express or implied invitation of the Navigation District since his company was in a continuing business, revenue-producing relationship with the Navigation District.

■ We recognize TEX.REV.CIV. STAT.ANN. art. 6252–19 § 13 (Vernon 1970) of the Texas Tort Claims Act which provides that the provisions of the Texas Tort Claims Act "shall be liberally construed to achieve the purposes hereof." While liberal interpretation is authorized under this article, such authority does not permit our court to engraph liability beyond that limited by the very act imposing the liability. *See Gonzales v. Lubbock State School*, 487 S.W.2d 815 (Tex.Civ.App. —Amarillo 1972, no writ). It is clear from a reading of Art. 6252–19 § 18(b) that, as to premises defects, any claimant is to be treated as a licensee unless payment has been made by *the claimant* for the use of the premises.

■ Appellant, as boarding agent, did not pay for the use of the premises, but rather, appellant was an employee of a company through which shipping companies paid for *their* use of the premises. Appellant did not qualify under the exception set forth in

Art. 6252–19 § 18(b). The trial court, therefore, did not err in submitting the case against the Navigation District based upon the legal theory that the Navigation District's duty owed to appellant was that owed to a "licensee."

Regarding Austin Bridge and Pressure Concrete's liability to appellant, as a "licensee" or "invitee," we note that there are no pleadings and no evidence to support the submission of any special issues regarding Austin Bridge or Pressure Concrete as an "owner or occupier" of the premises. There is no finding, express or implied, that either appellee was an "owner or occupier" of the premises. However, under Restatement (Second) of Torts §§ 383–385 (1974), an independent contractor, who acts in creating a condition upon land on behalf of the possessor, is subject to the same liability and enjoys the same freedom from liability for physical harm caused thereby to others upon the land as though he were the possessor of the land. Any duty owed by Austin Bridge or Pressure Concrete to appellant based upon premises liability theory would be limited to the duty owed by Navigation District. *Thomas v. Oil & Gas Building, Inc.*, 582 S.W.2d 873 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). As previously stated, appellant's status as to Navigation District, the undisputed premises owner and occupier, would be that of a "licensee"; therefore, appellant's status as to Austin Bridge and Pressure Concrete, under the authorities cited above, would be that of a "licensee." The trial court correctly defined appellant's status as a "licensee." Appellant's first through fourth and seventh points of error are overruled.

In his fifth point of error, appellant asserts that the trial court erred in entering judgment on the verdict and in overruling his motion for a new trial because there is a fatal and irreconcilable conflict among the jury's findings to Issues 3, 6, 9(1) and 17. The import of the jury's findings to the allegedly conflicting issues follows:

*Issue 3*

That Austin Bridge Company did not create or maintain a dangerous condition as respects to the hole in question;

*Issue 6*

That Austin Bridge Company did not know the dangerous condition, if any, of the hole in question;

*Issue 9(1)*

That Austin Bridge Company failed to warn plaintiff of the dangerous condition, if any, of the hole in question which was a proximate cause of his injuries;

*Issue 17*

That appellant's injury grew out of, was sustained in connection with or was incident to the performance of the Dock No. 9 rehabilitation work by either Austin Bridge Company or Pressure Concrete Construction Company.

In reviewing whether a fatal or irreconcilable conflict exists among the jury's findings to several special issues, we follow *Bender v. Southern Pacific Transportation Co.*, 600 S.W.2d 257 (Tex.1980) which states:

In reviewing the jury findings for conflict, the threshold question is whether the findings are about the same material fact. *Pearson v. Doherty*, 143 Tex. 64, 183 S.W.2d 453, 455 (1944). A court may not strike down jury answers on the ground of conflict if there is any reasonable basis upon which they can be reconciled. *Little Rock Mfg Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985, 989 (1949). The Court must "reconcile apparent conflicts on the jury's findings" if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole. *Ford v. Carpenter*, 147 Tex. 447, 216 S.W.2d 558, 562 (1949). *Bender* at p. 260.

The test for determining whether the jury's findings to special issues create a fatal and irreconcilable conflict is set forth in *Little Rock Furniture Manufacturing Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985 (Tex.1949):

"The test in such [a] case is, whether taking the finding alone in the one in-

stance, a judgment should be entered in favor of the plaintiff; and taking it alone in the other, judgment should be entered in favor of the defendant." *Little Rock Furniture Mfg. Co.*, 222 S.W.2d at p. 991.

Throughout appellant's brief on appeal, he implicitly asserts that he was entitled to recovery against all appellees on the basis of premises liability and not on the basis of the general principles of negligence. Based upon his asserted rights to recovery upon a premises liability theory, and, based upon his contention that the jury's findings to Issues 3, 6, and 9(1) conflict, appellant cannot meet the *Little Rock Furniture Mfg. Co.* test since the jury found both Issues 3 and 6 against him. It is fundamental that, before any duty arises in a premises liability case, when the claimant is a licensee, the owner or occupier must actually know of the dangerous condition at the time of the occurrence. *Lower Neches Valley Authority* at p. 563; *State v. Tennison* at p. 562. In Issue 3, the jury failed to find that Austin Bridge created or maintains a dangerous condition as respect to the hole in question; and, in Issue 6, the jury failed to find that Austin Bridge knew about the dangerous condition. No judgment could be rendered in favor of the claimant upon the "licensee" premises liability theory of recovery without affirmative findings to both Issues 3 and 6. In effect, the jury's finding to Issue 9(1) was rendered immaterial by the jury's findings to Issues 3 and 6.

Even if Issue 9(1) were to be considered a material issue to be answered by the jury, Issues 3, 6, and 9(1) do not address the same material fact as required under *Bender*. Issue 3 inquires whether or not Austin Bridge *created or maintained* a dangerous condition. Issue 6 inquires as to whether or not Austin Bridge *knew* of the dangerous condition. Issue 9(1) inquires whether or not Austin Bridge *failed to warn* of the dangerous condition. Restated, Issue 3 inquires about a *creating and maintaining;* Issue 6 inquires about *knowledge;* whereas, Issue 9(1) inquires

about *warning.* Thus, the jury's findings are not concerned with the same material fact; there is no conflict among the jury findings to Issues 3, 6 and 9(1).

There is no conflict between the jury's answer to Issue 17 and any other jury finding because Issue 17 basically asks if appellant's injury was sustained in connection with or was incidental to the rehabilitation work of either Austin Bridge or Pressure Concrete. Issue 17 has no relevance to the existence of, the knowledge of or the failure to warn of any dangerous condition, of which inquiry is respectively made in Issues 3, 6, and 9(1). Appellant's fifth point of error is overruled.

In his sixth point of error, appellant asserts that the trial court erred in submitting its explanatory instruction defining "dangerous condition" with Issues 2, 3 and 4. The explanatory instruction defined "dangerous condition" to mean "a condition involving as unreasonable risk of harm." An "unreasonable risk of harm" was then defined as being present "when there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen that the event which occurred or same or similar event would be likely to happen." Appellant contends that the inclusion of the adjective "sufficient" in conjunction with "probability" in the explanatory instruction improperly increased appellant's burden of proof and thereby constituted reversible error. We note that the language used in the explanatory instruction of the term "dangerous condition" tracks nearly verbatim the language used by the Texas Supreme Court in *Seideneck v. Cal Bayreuther Assoc.*, 451 S.W.2d 752 (Tex.1970) in defining a "dangerous condition." In *Seideneck*, the Texas Supreme Court stated that:

> A condition presenting an unreasonable risk of harm is defined as one in which there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event is likely to happen. *Seideneck* at p. 754.

We hold that the trial court properly submitted the explanatory instruction of "dangerous condition." Appellant's sixth point of error is overruled.

In his eighth through sixteenth points of error, appellant asserts that the jury's findings to Issues 2 through 8, 10, and 16, are so against the great weight and preponderance of the evidence as to be manifestly unjust. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *Allied Finance Company v. Garza*, 626 S.W. 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960). The jury's findings of which appellant complains respectively include the failure of the jury to find (1) that any appellee created or maintained a dangerous condition; (2) that any appellee knew of the dangerous condition, if any; (3) that the Navigation District or Pressure Concrete committed any negligent act or omission; and, (4) that appellant is entitled to be awarded any damages for future medical expenses. After reviewing the entire record, we hold that the jury's findings to Issues 2 through 8 and 10 are not against the great weight and preponderance of the evidence.

Regarding the jury's failure to award any damages for future medical treatment in Issue 16, the only testimony on future medical treatment was from Dr. Jack H. Henry, who could not give an estimate as to what charges would be incurred for future treatment. Since the doctor could not put a dollar figure on the future medical treatment, if any, it was not against the great weight and preponderance of the evidence for the jury to fail to do so. Appellant's eighth through sixteenth points of error are overruled.

In his seventeenth point of error, appellant asserts that the jury's finding to Issue 14, appellant's damages issue is inadequate and against the great weight and preponderance of the evidence so as to be manifestly unjust. Appellant contends that the early onset of the degenerative arthritic condition to his knee, the probability of a subsequent operation and the possibility of a total knee replacement, all of which allegedly resulted from the accident, rendered the jury's finding of $15,000.00 for his injuries inadequate and against the great weight and preponderance of the evidence so as to be manifestly unjust. We must view the evidence in the light most favorable to appellee and must indulge every legitimate conclusion favorable to appellee which might have been drawn from the facts proved. *Walker v. Missouri Pacific Railroad Co.*, 425 S.W.2d 462 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). The jury was instructed not to include any amount in its finding for any condition existing before the occurrence in question. There was testimony presented at trial that appellant had received treatment from Dr. Xico Garcia on five different occasions between March 5, 1979 and April 18, 1979 to his left knee. This was only seven months before appellant claimed to have injured his left knee in the accident in question. The jury could have concluded that appellant had some pre-existing condition in his knee which was aggravated by the accident in question. The jury was further instructed not to include any amount for any condition resulting from the failure of appellant to care for and treat his injuries. Dr. Henry testified that he discussed at length the need for appellant to lose some weight since appellant weighed approximately 375 pounds. Appellant said he lost from 20 to 45 pounds but had gained some of it back. At the time of trial, appellant weighed 375 to 380 pounds. The jury could have concluded from this testimony that appellant had not mitigated his damages by losing weight as he had been advised. After reviewing the entire record, we hold that the jury's finding of $15,000.00 is not inadequate and not against the great weight and preponderance of the evidence so as to

be manifestly unjust. Appellant's seventeenth point of error is overruled.

## CROSS–APPEAL

Appellee Austin Bridge, in urging its cross-appeal against co-appellee Pressure Concrete, asserts the following two cross-points of error: (1) the trial court erred in failing to render judgment on behalf of Austin Bridge for indemnity from Pressure Concrete for the reason that Austin Bridge is entitled to indemnity as a matter of law based on the contract between Austin Bridge and Pressure Concrete, and (2) the judgment of the trial court denying Austin Bridge indemnity from Pressure Concrete should be reversed for the reason that there is no evidence to support the jury's negative finding to Issue 18, but that an affirmative finding to said issue was established as a matter of law or, alternatively, that the jury's negative finding to Issue 18 is contrary to the overwhelming weight and preponderance of the evidence.

These two cross-points are based on the indemnity portion of the trial court's judgment, which is a severable portion of the case. Where appellant limits his appeal to only a part of the judgment which is otherwise severable, appellee will not be heard to complain of any matters falling wholly within that portion of judgment not brought forward for review by appellant. This Court may not consider cross-points on a severable portion of the judgment unless an independent appeal has been filed. *Cameron & Willacy Counties Community Projects, Inc. v. Gonzalez*, 614 S.W.2d 585 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Martin v. Body*, 533 S.W.2d 461 (Tex.Civ.App.—Corpus Christi 1976, no writ). It is well settled in Texas that an appellee must perfect an independent appeal before he may cross-assign error as to a co-appellee, and failure to perfect an appeal constitutes a waiver of the right to have the court pass upon his alleged cross-assignment of error as to such a co-appellee. *Sherman v. Stein*, 173 S.W.2d 732 (Tex.Civ.App.—San Antonio 1943, writ ref'd w.o.m.). Since the only party to perfect an appeal was appellant Marshbank, appellee Austin Bridge, by not filing an independent appeal, waived its right to complain by cross-points of the trial court's judgment denying indemnity to Austin Bridge against Pressure Concrete. Both of appellee Austin Bridge's cross-points are overruled.

The judgment of the trial court is AFFIRMED.