WAL–MART STORES, INC.,
d/b/a Sam's Wholesale
Club, Appellant,

v.

Mary Jo BERRY, Appellee.

No. 6–91–115–CV.

Court of Appeals of Texas,
Texarkana.

May 27, 1992.

Rehearing Denied June 23, 1992.

David R. McAtee, Kelly M. Crawford, Gibson, Dunn & Crutcher, Joe Horlen, Arter & Hadden, Dallas, for appellant.

Joe D. Gregory, Gregory & Gregory, Grapevine, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Wal–Mart Stores, Inc. appeals from a judgment awarding Mary Jo Berry damages for personal injuries she sustained while shopping in a Sam's Wholesale Club. Berry was shopping when a large stack of canned soft drinks fell on her. The jury found Wal–Mart negligent and awarded Berry actual damages of $345,286.61. The jury also found Wal–Mart grossly negligent and awarded Berry $200,000.00 in punitive damages. The trial judge ordered a remittitur of $100,000.00 of the punitive damages. The court also awarded prejudgment interest on future as well as past damages.

Wal–Mart contests the sufficiency of the evidence supporting the jury's findings on negligence, gross negligence, punitive damages, and future damages. It also challenges the trial court's jury charge and its rulings on admitting and excluding testimony. Berry challenges the remittitur order.

■ Wal–Mart first attacks the legal and factual sufficiency of the evidence of proximate cause. It contends that the trial court erred in denying its motion for a directed verdict and motion for judgment *non obstante veredicto* because there was no evidence of cause in fact or of Wal–Mart's actual or constructive knowledge that there was a problem with the soft drink display.

The overruling of a motion for directed verdict may be reviewed on appeal only if it was recited in a formal order or in the judgment. *Soto v. Southern Life & Health Ins. Co.*, 776 S.W.2d 752, 754 (Tex. App.—Corpus Christi 1989, no writ). This record does not contain any such recitation. Although no error was preserved by the motion for directed verdict, Wal–Mart's motion for judgment *non obstante veredicto* and motion for new trial preserved the legal and factual sufficiency points. *Bryan v. Dockery*, 788 S.W.2d 447, 449 (Tex.App.—Houston [1st Dist.] 1990, no writ).

A judgment *non obstante veredicto* is proper only if there is no evidence supporting the jury's findings. *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19 (Tex. 1987); *Bryan v. Dockery*, 788 S.W.2d at 449. We examine the evidence in the light most favorable to the verdict, disregarding all contrary evidence and inferences. *Navarette v. Temple Independent School Dist.*, 706 S.W.2d 308, 309 (Tex.1986); *see also Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); Robert Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960). If there is any probative evidence supporting the verdict, the no evidence point must be overruled. *Southern States Transportation, Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989). The factual sufficiency review requires us to examine all the evidence. We sustain the point only if the evidence supporting the verdict is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); Robert Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error, supra.*

Proximate cause has two elements: cause in fact and foreseeability. *Travis v. City of Mesquite*, 34 Tex.Sup. Ct.J. 231, 233 (Dec. 31, 1990); *City of Gladewater v. Pike*, 727 S.W.2d 514, 517 (Tex.1987). Cause in fact means that the act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *Travis v. City of Mesquite*, 34 Tex.Sup.Ct.J. at 233; *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (Tex.1980). Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Travis v. City of Mesquite*, 34 Tex.Sup.Ct.J. at 233. There may be more than one proximate cause of an accident. *Id.* Only in exceptional cases should jury findings on proximate cause be set aside on the ground that they are not supported by the evidence. *Enloe v. Barfield*, 422 S.W.2d 905, 908 (Tex.1967).

Wal–Mart contends that there is no evidence as to why the display fell. Berry was injured when two "pallets" containing between 4,000 and 6,000 cans of Pepsi Cola and stacked over sixteen feet high fell on her. Vendors deliver soft drinks to Sam's in these pallets, which are "shrink-wrapped" with heavy plastic. Sam's then stacks the pallets in three rows in the main shopping area. The first two rows are stacked three high, reaching a height of approximately sixteen feet from the shopping floor. The middle row is stacked two high. The aisle row is stacked one pallet high so customers will have easy access to the drinks. Sam's general manager, Jan Burd, testified that the pallets were shrink-wrapped in heavy plastic to give them "stability" and that unwrapped pallets were either rejected or rewrapped to avoid a safety hazard. He testified that shrink-wrapping is an appropriate safety precaution and that only pallets passing the safety inspection are stacked on the wall in the sales area. Three witnesses, however, testified that the pallets which fell and injured Berry were not shrink-wrapped, and photographs introduced in evidence tended to corroborate that testimony. Sam's frozen food supervisor, Kenneth Bowles, testified that unwrapped pallets were sometimes stacked on the very top of the display towers. There was also testimony that an assistant manager of Sam's said after the accident that the pallets were dangerous and that Sam's was in the process of putting shelves on the walls because that would be safer. One witness testified that,

after the accident, a Sam's employee said it looked like one of the Sam's employees stacked the pallets wrong. No rope or any device was used to secure the tower of pallets to the wall and prevent their leaning or falling. Just before the cans began to fall, the towers were leaning toward the aisle. Sam's frozen food manager said that they recognize the danger posed by leaning stacks of merchandise.

From the foregoing recitation, it can be seen that there is evidence that shrink-wrapping the pallets is necessary for their stability and to avoid a safety hazard. Lack of stability can cause the stacks to lean and, possibly, fall. The pallets were leaning just before the accident occurred. There is no evidence that anything else caused the pallets to fall. All this constitutes circumstantial evidence that the pallets leaned and fell because of a lack of stability brought about by the failure to shrink-wrap them as required by safety precautions.

As to foreseeability, in addition to the evidence that Sam's required the pallets to be shrink-wrapped to give them stability and considered unwrapped pallets dangerous, it is uncontradicted that the pallets were stacked, often three pallets high. This and the other evidence previously outlined constitutes some evidence from which the jury could infer that Sam's could reasonably foresee that the displays could fall if not properly wrapped and stacked.

Wal–Mart also contends that there is no evidence of its actual or constructive knowledge of the risk posed by the particular display involved here. *See, e.g., Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292 (Tex.1983). However, Berry was not required to show knowledge of this specific hazard. *Id.* at 296. Rather, she had to prove knowledge of the foreseeable harm from some course of conduct. *Id.* The evidence that Sam's required the pallets to be shrink-wrapped before being stacked allows the inference that it knew of the danger of stacking unwrapped pallets. This is some evidence of knowledge.

The evidence is also factually sufficient to support the verdict. With respect to proximate cause, Wal–Mart points to the testimony of two witnesses to the accident who testified that they did not know what caused the cans to fall. Wal–Mart also contends that no one else, such as an expert, testified to the precise cause of the occurrence. The evidence previously outlined, however, is sufficient to support a finding of cause in fact, as well as foreseeability. The jury was authorized to believe such evidence as it chose and to reject any conflicting evidence. *Creech v. Thompson,* 156 Tex. 561, 297 S.W.2d 817, 820 (1957); *Burelsmith v. Liberty Mutual Ins. Co.,* 568 S.W.2d 695, 698 (Tex.Civ.App.—Amarillo 1978, no writ). Considering the favorable evidence discussed under the no evidence points, the evidence is factually sufficient to support the jury findings of proximate cause and knowledge.

■■■ Wal–Mart, by its third point of error, alleges that the trial court's jury charge[1] was improper because it did not ask the jury to find whether an unreasonable risk of harm existed and it did not define "unreasonable risk of harm." Wal–Mart objected to the charge and submitted an issue and a definition.[2] It contends that

---

1. The court submitted the following:
QUESTION NO. 1:
 Do you find that the negligence, if any, of the Defendant proximately caused the occurrence in question?
ANSWER: "Yes" or "No"
ANSWER: Yes
 In answering Question No. 1, you are instructed that the Defendant is subject to liability for physical harm caused to its customers by a condition on its premises if the Defendant:
 (a) Knew or by exercise of reasonable care would have discovered the condition and should have realized that it involved an unreasonable risk of harm to its customers, and,

(b) Failed to exercise reasonable care to protect its customers against the danger.
This question is in the form suggested in 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 66.04 (1990).

2. The following was requested and denied:
INSTRUCTIONS
 In answering Question No. 1, you are instructed that the Defendant is subject to liability for physical harm caused to its customers by a condition on its premises if, but only if, the Defendant:
 (a) Knew or by exercise of reasonable care would have discovered the condition and

the court's refusal to submit a special question and definition excluded an essential element of Berry's case from the jury.

 Generally, in cases involving *premise defects*, the jury must find that an unreasonable risk of harm existed. *Physicians & Surgeons Gen. Hosp. v. Koblizek*, 752 S.W.2d 657, 659 (Tex.App.—Corpus Christi 1988, writ denied). If the action is based on *negligent activity* on the premises rather than a defect and the plaintiff is indisputably an invitee, the case may be submitted as an ordinary negligence case. *Tovar v. Amarillo Oil Co.*, 692 S.W.2d 469 (Tex.1985); *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985); *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex.1978); *Physicians & Surgeons Gen. Hosp. v. Koblizek*, 752 S.W.2d 657; 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 66.04 (1990). Berry was an invitee, and her case was predicated on Sam's negligent stacking and its failure to wrap the soft drink pallets. Thus, we conclude that the case could properly have been submitted as an ordinary negligence case. If the case can be considered as a premises defect case, we conclude that, under our broadform submission rules, TEX.R.CIV.P. 277, the question submitted, along with its accompanying instruction, contained all the essential elements outlined in *Corbin v. Safeway Stores, Inc.*[3] Although no separate question was submitted on unreasonable risk, the instruction informed the ju-

rors that an unreasonable risk must exist in order for them to find Wal–Mart negligent. We find this sufficient under our broad-form submission practice. TEX. R.CIV.P. 277.

 Wal–Mart also contends that the trial court was required to define "unreasonable risk." An instruction should not be refused if it is reasonably necessary to enable the jury to render a proper verdict. *See, e.g., Steinberger v. Archer County*, 621 S.W.2d 838, 841 (Tex.App.— Fort Worth 1981, no writ). Legal terms must be explained. *See, e.g., Security Savings Ass'n v. Clifton*, 755 S.W.2d 925, 933 (Tex.App.—Dallas 1988, no writ). Unreasonable risk has been defined in *Marshbank v. Austin Bridge Co.*, 669 S.W.2d 129, 135 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.), and other cases, but at least one court has stated that a definition is not necessarily required. *Physicians & Surgeons Gen. Hosp. v. Koblizek*, 752 S.W.2d at 660. Wal–Mart cites no case where a judgment was reversed solely for the failure to define unreasonable risk, and we have found none. The term, as defined in *Marshbank*,[4] is not beyond the knowledge of lay persons. In the facts of this case, and considering the definition of negligence given, we conclude that the failure to submit the definition was not reversible error.

---

should have realized that it involved an unreasonable risk of harm to its customers, and
 (b) Failed to exercise reasonable care to protect its customers against the danger.
 You are instructed that a condition presented an "UNREASONABLE RISK OF HARM" is one in which there is a sufficient probability of a harmful event occurring so that a reasonably prudent person would have foreseen that *it or some similar event would be likely to* occur.
QUESTION
 Do you find from a preponderance of the evidence that, on the occasion in question, the Pepsi display presented an unreasonable risk of harm to the Plaintiff?

3. There, the court stated that the essential elements in that premises defect case were:
 A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

 (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves unreasonable risk of harm to such invitees, and

 . . . . . .
 (c) fails to exercise reasonable care to protect them against the danger.
*Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex.1983), *quoting*, RESTATEMENT (SECOND) OF TORTS § 343 (1965).

4. An "unreasonable risk of harm" is present "when there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen that the event which occurred or same or similar event would be likely to happen." *Marshbank v. Austin Bridge Co.*, 669 S.W.2d 129, 135 (Tex.App.— Corpus Christi 1984, writ ref'd n.r.e.).

In its fourth point of error, Wal–Mart contends the trial court erred in admitting Erin Alexander's testimony about an alleged statement of a Sam's employee. Ms. Alexander testified that the employee said it looked like one of Sam's employees stacked the pallets wrong. Wal–Mart objected to this testimony on hearsay and relevancy grounds.

This statement by one of its employees was admissible on the issue of Sam's knowledge. *See H.E.B. Food Stores v. Slaughter*, 484 S.W.2d 794, 797 (Tex.Civ. App.—Corpus Christi 1972, writ dism'd). Knowledge is clearly relevant to Berry's cause of action. *See Bowie v. G.P. Plastics*, 572 S.W.2d 42, 44 (Tex.Civ.App.— Eastland 1978, writ ref'd n.r.e.). Since Wal–Mart made only a general objection and did not request any limiting instruction, it was not error to admit this testimony for all purposes. Tex.R.Civ.Evid. 105(a); 1 R. Ray, Law of Evidence Civil and Criminal § 25 (Texas Practice 3d ed. 1980).

Wal–Mart also contends that the trial court erred in admitting the hearsay testimony of Diane McKnight concerning an alleged statement by an assistant manager. McKnight testified that an assistant manager said that the pallets were dangerous and that Wal–Mart was in the process of putting shelves on the walls because shelving was safer.

Wal–Mart raised only a general hearsay objection to this evidence. Therefore, if the testimony was admissible for any purpose, any complaint as to admissibility on other grounds was waived. Tex.R.Civ. Evid. 105(a); 1 R. Ray, Law of Evidence Civil and Criminal § 25.

The assistant manager's statement is clearly probative on the issue of Sam's knowledge of the dangerous condition. Being admissible for the purpose of proving knowledge, Wal–Mart cannot raise any other complaints based on its general objection.

Wal–Mart asserts that the declarant's agency relationship was not established because he was not identified by name, relying on *Norton v. Martin*, 703 S.W.2d 267, 271–72 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). We find that case distinguishable. That case involved an unnamed declarant *and* no evidence that the declarant was even employed by the defendant. Where there is evidence of employment, the failure of the witness to remember the declarant's name affects only the weight and credibility of the testimony and not its admissibility. *Yellow Freight System, Inc. v. North American Cabinet Corp.*, 670 S.W.2d 387, 389–90 (Tex.App.— Texarkana 1984, no writ).

McKnight unequivocally testified that the declarant was the assistant manager, that he was in the manager's office, and that he was taking her accident report. The testimony was uncontroverted and is sufficient proof of the declarant's representative capacity.

Wal–Mart next contends that the record did not show that the statement was made within the scope of the declarant's employment. The scope of employment must be shown where the capacity of the declarant was not evident. *Handel v. Long Trusts*, 757 S.W.2d 848, 851 (Tex.App.—Texarkana 1988, no writ). Not only was the declarant's capacity shown, but Jan Burd, the store manager at the time, testified that managerial duties included safety considerations. He also testified that other members of management may take injury reports. The thrust of this evidence is that safety concerns are within the scope of an assistant manager's employment.

Wal–Mart next argues that the trial court erred in submitting special issues on gross negligence and exemplary damages because there was no evidence to support them. Both parties agree that the mental attitude of the defendant is what raises ordinary negligence to gross negligence. A defendant's conscious indifference to the rights, welfare, and safety of others may be inferred when the evidence demonstrates that a reasonable person would have realized that his conduct created an extreme degree of risk to the safety of others. *Williams v. Steves Industries, Inc.*, 699 S.W.2d 570, 572 (Tex.1985); *Rainbow Express, Inc. v. Unkenholz*, 780

S.W.2d 427, 429 (Tex.App.—Texarkana 1989, writ denied). Gross negligence requires that the actor realize that his acts created a probability of injury, but made a conscious decision to do nothing to avoid the injury. Considering only the evidence and inferences supporting the jury's finding and disregarding all contrary evidence and inferences, *Clifton v. Southern Pacific Transportation Co.*, 709 S.W.2d 636 (Tex.1986); *Texarkana Memorial Hospital, Inc. v. Firth*, 746 S.W.2d 494, 495–96 (Tex.App.—Texarkana 1988, no writ), we find some evidence of gross negligence.

The jury could infer from the testimony regarding Sam's receiving and stacking procedures that it appreciated the risk associated with stacking improperly wrapped pallets. There was evidence that the pallets which fell were not shrink-wrapped and were placed well above ground level. There was evidence that the displays were not shelved or tied in any manner that might reduce the risk of falling. Sam's frozen food supervisor testified that unwrapped pallets were sometimes stacked on the very top of the display towers. He also testified that a picture taken just before trial showed pallets without shrink-wrapping. Thus, there was evidence that Sam's still stacks soft drinks in this manner. Furthermore, the assistant manager's declaration that the pallets were dangerous constituted more evidence that Sam's knew that its chosen method of displaying soft drinks was dangerous. Thus, there is evidence supporting the inference that Sam's knew that its conduct in this regard was dangerous, but continued it in spite of such knowledge. This is some evidence of gross negligence. The court properly submitted the issue to the jury.

Wal–Mart also challenges the factual sufficiency of the evidence to support a finding of gross negligence. It points to evidence that the store manager testified that Wal–Mart is greatly concerned about safety and that a safety committee meets regularly to review the operations. He testified that Wal–Mart employees check all pallets and rewrap them when necessary and that attempts are made to identify other types of safety hazards. He testified

that the shrink-wrapping is an appropriate safety precaution and that only pallets passing the safety inspection are stacked on the wall in the sales area. He further testified that he determined that the pallet which fell had been shrink-wrapped.

On the other hand, there is evidence that Sam's supervisory personnel knew that stacking soft drinks on pallets that were not wrapped was dangerous. There was also evidence that these particular pallets were not shrink-wrapped. The height of the display is uncontroverted. From the testimony of Sam's supervisory personnel, the jury could also find that the refusal to shelve, rewrap, or tie down these displays was a conscious decision. There was also evidence that this manner of stacking pallets was store policy, rather than a momentary lapse of judgment. *See, e.g., Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981). Of course, the jury was entitled to draw contrary inferences, but did not. The evidence as a whole supports the jury's findings with regard to gross negligence.

■■■■■■ Berry brings a related cross-point, alleging that the trial court erred in ordering a remittitur of $100,000.00 of the $200,000.00 punitive damage award. In reviewing a trial court's order of remittitur, the standard of review is factual sufficiency. *Snoke v. Republic Underwriters Ins. Co.*, 770 S.W.2d 777 (Tex.1989); *Larson v. Cactus Utility Co.*, 730 S.W.2d 640, 641 (Tex.1987); *Pope v. Moore*, 711 S.W.2d 622, 623 (Tex.1986). All of the evidence must be examined, and remittitur is proper only if some portion of the award is unsupported by sufficient evidence or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pope v. Moore*, 711 S.W.2d at 624.

■■■■■■ The appropriate amount of exemplary damages depends on the facts of each particular case, considering the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends the sense of

justice and propriety. *Alamo National Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex. 1981); *Texarkana Memorial Hospital, Inc. v. Firth,* 746 S.W.2d at 498. The appellate court may also consider the ratio of punitive damages to actual damages. *Wright v. Gifford–Hill & Co., Inc.,* 725 S.W.2d 712, 714 (Tex.1987). An award of punitive damages is generally left to the jury's discretion, but should be set aside if it is oppressive. *Aetna Casualty and Surety Co. v. Joseph,* 769 S.W.2d 603, 608 (Tex.App.—Dallas 1989, no writ).

Berry contends that since the evidence was sufficient to support the jury's verdict of gross negligence and the jury's award of exemplary damages was reasonably proportionate to the amount of actual damages, the trial court should not have ordered a remittitur. The ratio of the jury's exemplary damages award of $200,000.00 to the actual damages of $345,000.00 is about .58/1. As far as proportionality is concerned, this is not excessive. Proportionality, however, is just one criterion for judging the excessiveness of punitive damages. The trial court concluded that the evidence was factually insufficient to support an award of $200,000.00. While there is sufficient evidence of gross negligence, and thus sufficient evidence to support an award of *some* punitive damages, we do not feel disposed to disagree with the trial court's ruling that the evidence is factually insufficient to support an award of $200,-000.00. There is evidence that Sam's had safety programs and conducted a conscious effort to promote safety. There is no evidence that Sam's consciously set out to injure Berry or that its conduct was so egregious or reckless as to be quasi-criminal. *See First City National Bank of Paris v. Haynes,* 614 S.W.2d 605 (Tex.Civ. App.—Texarkana 1981, no writ). The trial court had the benefit of observing the conduct and demeanor of the parties and witnesses and is in the best position to evaluate the extent to which improper factors may have unduly influenced the jury's award. *See Larson v. Cactus Utility Co.,* 730 S.W.2d at 642 (Hill, C.J., dissenting). We are not inclined to substitute our judgment for the trial court's on this issue. The remittitur order will be sustained.

■ In the eighth point of error, Wal–Mart alleges that the trial court erred in excluding the state of mind testimony of the witness, Burd, Sam's manager. This testimony regarded communications received in 1984 from Wal–Mart's district manager, who had been informed by the Pepsi vendor that stacking the pallets three high was satisfactory. An offer was made to introduce this testimony, but it was excluded on Berry's hearsay objection. Wal–Mart contends that this testimony directly addresses the issue of its state of mind regarding the safety of the soft drink display and was therefore admissible under TEX.R.CIV.EVID. 803(3).

The statement, made by a declarant not present in court and implying that stacking three pallets high is safe, was hearsay and therefore subject to objection. TEX.R.CIV. EVID. 801, 802. As the statement was not admissible to prove safety, Berry contends that Wal–Mart should have limited the offer to state of mind, admissible under Rule 803(3). By failing to so limit its offer, Wal–Mart waived its ground for complaint on appeal. *See Ferguson v. DRG/Colony North, Ltd.,* 764 S.W.2d 874, 882 (Tex. App.—Austin 1989, writ denied). Wal–Mart made no showing that the excluded testimony was admissible under any other hearsay exception. *J.V. Harrison Truck Lines, Inc. v. Larson,* 663 S.W.2d 37, 42 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); TEX.R.CIV.EVID. 105; 35 TEX. JUR.3D *Evidence* § 219 (1984).

■ In its ninth point of error, Wal–Mart contends the trial court erred in denying its motion to disregard jury findings because there is no evidence to support the award for loss of future earning capacity. However, in considering only the evidence and inferences favorable to the jury finding, *see, e.g., Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965), we find that there was evidence of Berry's past work history and earnings. Berry had worked as a beautician, at a printing company doing general office work, and at Rath Packing Company. Her earnings rose from $25,940.00 in 1980

to $75,942.00 in 1985, and she had earned over $46,000.00 in the first four months of 1986. That same year, Berry formed her own printing company and had gross receipts of over $70,000.00 in 1987 and over $46,000.00 in the first few months of 1988, although she experienced tax losses in both these years. There was testimony that Berry expected to gross well over $100,000.00 in 1988. There was also testimony that, before her injuries, she could have gone back to work for a printing company at any time.

Berry's doctors testified that she has not been able to return to work since the accident. They also testified that she is unable to work at any job involving any level of stress, such as working in a sales position. They further testified that, but for the accident, she would have been able to continue working in the printing industry until retirement age. In addition, one doctor testified that Berry is now only able to work as a receptionist or clerk in a variety store. Another doctor testified that Berry is now only capable of doing very light office work. This is some evidence of lost future earning capacity.

Wal-Mart's tenth point of error alleges insufficient evidence to support the award for loss of future earning capacity. Wal-Mart cites evidence that Berry has fully recovered from her neck surgery, tested normal by her own doctor, has a full range of motion, walks a mile a day, and is capable of sitting and driving. Nevertheless, the jury found $200,000.00 for lost future earning capacity. This is less than $7,000.00 per year for the balance of Berry's thirty-year life expectancy. It amounts to less than $15,000.00 per year for her remaining working years before normal retirement age. Although the jury could have reached another conclusion, the evidence is factually sufficient to support this award. *See American Conveyor Corp. v. Irwin*, 470 S.W.2d 256, 259–60 (Tex.Civ.App.—Texarkana 1971, no writ).

Wal-Mart also asserts that the trial court erred in awarding prejudgment interest on future damages. It relies on *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985), where the Supreme Court held that prejudgment interest is limited to accrued damages and is not allowed on future damages. *Id.* at 556. Wal-Mart also cites *Cimino v. Raymark Industries, Inc.*, 739 F.Supp. 328 (E.D.Tex. 1990), which held that both *Cavnar* and Article 5069–1.05, § 6, apply to suits filed after September 1, 1987.[5]

TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 6(a) (Vernon Supp.1992), provides:

> Judgments in wrongful death, personal injury, and property damage cases must include prejudgment interest.... [P]rejudgment interest accrues on the amount of the judgment during the period beginning on the 180th day after the date the defendant receives written notice of a claim or on the day the suit is filed, whichever occurs first, and ending on the day preceding the date judgment is rendered.

In *C & H Nationwide, Inc. v. Thompson*, 810 S.W.2d 259 (Tex.App.—Houston [1st Dist.] 1991, no writ), the court concluded that *Cavnar* applied only to actions commenced prior to September 2, 1987, and Article 5069–1.05, § 6 applies to all actions commenced after that date. That court recognized that the statute makes no distinction between past and future damages. *Accord C.T.W. v. B.C.G.*, 809 S.W.2d 788 (Tex.App.—Beaumont 1991, no writ); *see also*, John Montford & Will Barber, *1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System*, 25 HOUS.L.REV. 59, 102–03 (1988). Presumably, the Legislature was aware of *Cavnar* when it enacted the new statute. *C.T.W. v. B.C.G.*, 809 S.W.2d at 795; *see also Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286, 293 (1951); 67 TEX. JUR.3D *Statutes* § 134 (1989). While both

**5.** Wal-Mart also cites *Southwestern Bell Telephone v. Vollmer*, 805 S.W.2d 825 (Tex.App.—Corpus Christi 1991, writ denied), a DTPA suit, and *Alaniz v. Yates Ford, Inc.*, 790 S.W.2d 38 (Tex.App.—San Antonio 1990, no writ), a suit for statutory penalties under the Consumer Credit Code. As these cases do not deal with personal injury actions or this statute, they are not controlling.

*Thompson* and *C.T.W.* involved unsegregated damages, the clear language of the statute mandates awarding prejudgment interest to the full amount of judgments, whether or not damages are segregated.

The judgment of the trial court is affirmed.