Owen W. CECIL, et al., Appellants,

v.

Walter P. ZIVLEY, Independent Administrator of the Estate of Perry W. Robertson, Deceased, Appellee.

No. A14–83–712–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 20, 1984.

Richard L. Rothfelder, Ryan & Shoss, Houston, for appellants.

David Beale, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and CANNON and DRAUGHN, JJ.

OPINION

DRAUGHN, Justice.

This is an appeal from a judgment awarding Appellee recovery on four promissory notes. After both sides presented their evidence, the trial judge granted Appellee's "Motion for the Court to Withdraw this Case from the Jury and Render Judgment for Plaintiff, or, Alternative Motion for Instructed Verdict." Appellants raise twelve points of error attacking the trial court's granting of the Motion. We affirm.

This suit grows out of a series of promissory notes given as part of the purchase price of an apartment complex. In 1976, Perry Robertson wished to sell his interest in the Le Manoir Apartment complex in Houston. Robertson contacted A. Jack Gregory to find a prospective purchaser for the apartments. Gregory, in turn, contacted Fred Gardner, who began to assemble a group of investors to purchase the apartment complex.

Gardner formed an investment group named Memorial Trust to purchase the apartments for conversion into condominiums. Gardner appointed himself trustee of the trust. Gardner prepared and distributed to potential investors a trust agreement and confidential memorandum explaining Gardner's investment proposal. Appellants, Owen W. Cecil, Grant R. McKeever, Robert W. Cherry, John Greig Coogan, Bruce R. Kelly, L.G. Menefee, Marlan L. Modeland, John C. Perkins, and Jack Whitmore were investors in the Memorial Trust. Each of the Appellants signed powers of attorney which authorized Gardner to act for them in the purchase of the Le Manoir Apartments. Each power of attorney provided in part that:

Such powers will include, but are not limited to, the execution of all purchase vendor lien notes with joint and several liability, deeds, deeds of trust, and other security instruments relative to the purchase of said Le Manoir Apartments.

Pursuant to the powers of attorney, at the closing of the sale of the apartments, Gardner executed four promissory notes as part of the purchase price for Robertson's interest in the apartment complex.

Gardner failed to make timely payment on the notes given to Robertson and the other notes executed in connection with the purchase of the apartments. Attorneys for the note holders, including Robertson, began sending notice letters to the individual investors, demanding payment on the notes. After receiving these letters, the investors confronted Gardner and demanded an explanation. Gardner explained that the notes had not been paid because of a temporary cash flow problem which would be solved as soon as there was final approval on the loans of some of the prospective condominium purchasers.

The financial problems did not get better. In February, 1978, the apartments were set for foreclosure due to the non-payment of promissory notes held by other creditors of the trust. The individual trust investors obtained the books and records of the trust and turned them over to John Stormes, a certified public accountant. Stormes reported that a substantial amount of trust money was missing. The trust investors forced Gardner to resign as trustee and selected three of the individual investors to serve as co-trustees. In order to avoid the impending foreclosure, the apartments were filed for bankruptcy by the investors, hoping that a purchaser for the apartment complex could be found. No purchaser was found and eventually the apartments were foreclosed upon by another note holder.

Robertson brought suit on four promissory notes executed by Gardner, on behalf of the trust investors. After suit was filed, but prior to the time of trial, Robertson died. Subsequently, Appellee was named as Independent Administrator of the Estate of Robertson and was made a party to this suit. Trial was to a jury, but, after each side had presented its evidence, the trial court granted Appellee's Motion for Instructed Verdict and denied Appellants' motion. Appellants attack the trial court's action in granting Appellee's motion.

■ On appeal from the granting of an instructed verdict, an appellate court is to determine whether there is any evidence of probative force to raise fact questions on the material issues of the case. *Henderson v. Travelers Insurance Co.*, 544 S.W.2d 649, 650 (Tex.1976). All of the evidence in the record must be considered by the reviewing court in a light most favorable to the party against whom the instructed verdict was rendered and we must discard all contrary evidence and inferences. *Henderson*, 544 S.W.2d at 650; *Kennedy v. Beasley*, 606 S.W.2d 1 (Tex.Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). This court must affirm the action of the trial court if Appellants failed to present some legally sufficient evidence on each element of the defenses Appellants raised to Appellee's suit on the promissory notes. *See generally*, 3 R. McDonald, TEXAS CIVIL PRACTICE IN DISTRICT and COUNTY COURTS § 11.28.1 (rev. 1983).

■ In point of error one, Appellants argue that the trial court erred in finding there was no evidence refuting Gardner's actual authority to execute the promissory notes on behalf of Appellants. The second point of error is that the trial court erred in finding that Appellants presented no evidence that Gardner did not possess apparent authority to execute and bind Appellants on the promissory notes. Even if we assume that Appellants presented some evidence refuting Gardner's actual authority, an issue we do not decide, if there was no evidence refuting Gardner's apparent authority, the trial court properly granted the motion for instructed verdict on the issue of Gardner's authority to execute and bind Appellants on the promissory notes.

Appellants attack Gardner's apparent authority in two ways. They argue that a third party, like Appellee, may not use the doctrine of apparent authority to bind them when the third party has notice of fraud in the inducement of the delegated authority, or of any limitations on the agent's power and the agent's deviation therefrom. *See Douglass v. Panama, Inc.,* 504 S.W.2d 776 (Tex.1974). Appellants argue that any notice that Gregory had is attributable to Robertson.

Appellants contend that a written contract may be comprised of several documents and those separate documents must be construed together. *See W.B. Dunavant and Co. v. Southmost Growers, Inc.,* 561 S.W.2d 578, 582 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Appellants believe that according to the terms of the trust agreement, confidential memorandum, and other documents there existed three substantial limitations on any authority granted to Gardner. Appellants argue that the limitations on Gardner's authority were that:

1. Thirty units in the Memorial Trust would have to be fully purchased and subscribed to before the apartment complex would be purchased;

2. The total purchase price to be paid by the Trust for the apartments would not exceed $3,720,000;

3. Gardner would execute, and personally obligate Appellants on, promissory notes totalling no more than $200,-000.

Appellants contend because Gardner exceeded these limitations on his authority, Appellee may not assert any authority on the part of Gardner to bind the investors on the promissory notes. Appellants also believe that the same three matters form the basis of their claim of fraudulent inducement.

■ Appellants argue that a principal is not bound by the conduct of his agent when the agent acts in excess of the actual authority given to him. *Gessell v. Traweek,* 628 S.W.2d 479, 482 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.); *Webb v. Webb,* 602 S.W.2d 127, 129 (Tex.Civ.App.—Austin 1980, no writ); *Gunn v. Schaeffer,* 567 S.W.2d 30, 32 (Tex.Civ.App.—El Paso 1978, no writ). We have no dispute with this general statement. However, we agree with the trial court that Appellants presented no evidence in support of the alleged limitations on Gardner's apparent authority.

■ The trust agreement provided that Gardner had the authority to do the following:

A. Enter into and contract for the purpose of purchasing the subject property and to execute all notes, papers, earnest money contracts, deeds of conveyance and other instruments pertaining to and necessary to the purchase thereof.

\* \* \* \* \* \*

D. Without in any wise limiting the foregoing, to execute and perform in the subscribers behalf, any notes, vendor or promissory notes, necessary and to perform any act or deed of any nature or anything whatsoever that ought to be done, executed or performed in or about the premises, in connection with the purchase of said property, and as fully and effectively as the subscribers to this agreement could do if personally present.

The power of attorney executed by the subscribers to the trust provided:

I grant to my said attorney in fact full power and authority to do and perform all and every act and thing whatsoever requisite, necessary, and proper to be done in the exercise of any of the rights and powers herein granted, as fully to all intents and purposes as I might or could do if personally present, regarding the purchase of Le Manoir Apartments, with full power of substitution or revocation, hereby ratifying and confirming all my said attorney in fact, shall lawfully do or cause to be done by virtue of this power of attorney and the rights and powers herein granted. *Such powers will in-*

*clude, but are not limited to, the execution of all purchase vendor lien notes with joint and several liability, deeds, deeds of trust, and other security instruments relative to the purchase of said Le Manoir Apartments* (emphasis added).

The grant of authority to Gardner contained in both the trust agreement and power of attorney is quite broad. The trust agreement and confidential memorandum do provide that there were to be thirty shares in the trust, the prospective purchase price of the apartments was $3,720,000, and the investors must be willing to sign a $200,000 note. However, these documents do not expressly limit Gardner's authority as Appellants argue. Because the documents presented no evidence of limitations on the authority granted to Gardner, we need not determine if there was any evidence of Gardner acting beyond the alleged limitations.

Appellants argue that they were fraudulently induced to join the trust and sign the powers of attorney. They contend that fraudulent inducement is fatal to a contract and it is a valid defense against enforcement of such contract. *See Roberts v. Tipton,* 562 S.W.2d 921, 923 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). Appellants assert that proof of fraud by Gardner in obtaining Appellants' signatures to the powers of attorney would negate any authority allegedly given Gardner.

■■■ We have no dispute with the general statement that fraudulent inducement is a valid defense to enforcement of a contract. However, Appellants have failed to show that Robertson, individually or through Gregory, had notice of any fraud in this case. Assuming that Appellants established evidence on all the elements of fraudulent inducement, Appellants produced no evidence connecting the alleged fraud to Robertson. The only evidence of misrepresentation were oral statements made by Gardner to some, but not all, of the Appellants. Appellants produced no evidence that Gregory or Robertson had any knowledge of these oral representations or

that the representations were false. The strongest evidence in support of Appellants' position is contained in the testimony of Cecil and Gardner. Cecil testified that he believed that Jack Gregory and Perry Robertson knew that Gardner had stolen money from the trust. Cecil did not testify that Gregory or Robertson knew of the representations upon which Appellants base their claim of fraudulent inducement. During Gardner's testimony at trial, an earlier deposition was used to impeach Gardner's testimony on the questions of Gregory's knowledge. While Appellants may have been successful in impeaching Gardner, the prior statements cannot be used as substantive evidence of the truth of the facts stated. *Atlantic Mutual Insurance Co. v. Middleman,* 661 S.W.2d 182 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Smith v. Tennessee Life Insurance Co.,* 618 S.W.2d 829 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); 1 R. Ray, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 688 (Texas Practice 3d ed. 1980).

■■■ In addition, the trust agreement and confidential memorandum do not contain the representations that Appellants claim. The confidential memorandum generally states "[t]here will be a total of thirty (30) units in this Trust." The memorandum does not provide that thirty shares in the trust must be fully purchased and subscribed to prior to the purchase of the apartments. The trust agreement does provide that the *"prospective* purchase price of the property is $3,720,000.00 (emphasis added)." The agreement does not state, as Appellants argue, that the total purchase price to be paid by the Trust for the Apartments would not exceed $3,720,000. Both documents state that "[e]ach investor must be willing to sign a $200,000.00 note jointly and severally...." Neither document contains a statement that the total personal liability of the trust investors would not exceed $200,000.

The statements contained in these documents are neither limitations on Gardner's authority nor false misrepresentations

upon which a claim of fraudulent inducement could be based. Appellants have failed to refute Gardner's apparent authority to execute the promissory notes. Point of error two is overruled. Because Gardner did have apparent authority, we need not decide the remaining points of error contesting authority and whether Appellants have waived or are estopped from contesting authority.

In points of error ten and eleven, Appellants argue that the trial court erred in determining that, as a matter of law, a $200,000 and a $139,175 note were not usurious. Both of these notes contained the following provision:

In the event the LeManoir Apartments are sold as townhouses, the said holder shall receive [$2,000/$725] per unit at closing regarding the 120 units and that this payment shall be in lieu of and substitute the note receipts of principal and interest as hereinabove set forth. However, the holder hereof shall receive the same rate of interest per month for as many months as it takes to pay such note on the reduced and outstanding principal.

In the $200,000 note, the stipulated amount is $2,000, and, in the $139,175 note, the stipulated amount is $725. Appellants argue that these notes are usurious because they allow the exaction of a greater compensation than allowed by law for the use of money by the borrowers.

Appellants do not allege that Robertson actually received usurious interest but that the notes are usurious as a matter of law because they could have, hypothetically, allowed Robertson to exact interest at a rate greater than that allowed by law. Appellants argue that the "conversion payment" clause contained in both of the challenged notes allows Appellee to receive and keep interest far in excess of the maximum rate allowed by law. Under the $200,000 note, for example, Appellants were to pay $2,000 to Appellee as each unit in the complex was converted into a condominium. Appellants argue that because there were 120 units in the complex, the note required payment of $240,000 upon conversion of all units. Ap-

pellants conclude that if the full conversion was completed within a short period of time, the note would call for the payment of $240,000. Appellants assert that $40,-000 of that amount would be interest which under hypothetical circumstances could be usurious.

▇▇▇▇ Whether the notes are usurious because of the inclusion of the challenged clause is a question of construction. *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324 (Tex.1984); *Smart v. Tower Land and Investment Co.,* 597 S.W.2d 333 (Tex.1980). This court will adopt the construction of the contract which comports with legality, if the contract is susceptible of more than one reasonable interpretation. *Conte v. Greater Houston Bank,* 641 S.W.2d 411 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). We will not find the contract under construction usurious unless it expressly entitled the Appellee to exact interest at a rate greater than that allowed by law. *Smart,* 597 S.W.2d at 341.

▇▇▇▇ These notes do not expressly entitle Appellee to exact usurious interest. Looking at the note provision in question, the Appellants have not shown that the trial court's failure to find the notes to be usurious was error. The provisions merely provided for payments to Robertson as the individual condominiums were sold to third-parties. The notes clearly provided that these payments were "in lieu of and substitute" for the note payments of principal and interest and that these payments were to reduce the outstanding principal. While the notes could under hypothetical circumstances be usurious, an equally likely construction of the provisions is that the conversion payments were only required up to the amount of principal and interest due under the notes. This latter construction is at least as reasonable as the construction advanced by Appellants. Under these circumstances, Appellants have failed to show that the trial court's construction of the notes was erroneous. Points of error ten and eleven are overruled. Due to our disposition of those points, we need not decide

whether the trial court erred in determining that the counterclaim for usury was abated by Robertson's death.

The judgment is affirmed.