IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-263-CV





THE CITY OF GRANITE SHOALS,



 APPELLANT


vs.





HERMAN WILLIAMS,



 APPELLEE




 




FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT



NO. 14,583, HONORABLE D. V. HAMMOND, JUDGE PRESIDING 



 





PER CURIAM


 This is an appeal from a jury verdict awarding damages in a suit for breach of an
employment contract. After a trial on the merits, the jury found that appellant City of Granite
Shoals ("the City") had breached a ten-year employment contract with its chief of police, appellee
Herman Williams. The trial court rendered judgment on the verdict and the City appealed. In
five points of error, the City argues the trial court erred in denying its motion for judgment non
obstante veredicto because (1) the contract as interpreted by the jury is void and unenforceable;
(2) there is legally insufficient evidence to support the jury's finding that the contract required
"cause" for termination; and (3) even if "cause" were required, the failure to find that cause
existed was against the great weight and preponderance of the evidence. The City further argues
the trial court erred in ruling that the contract was ambiguous and in submitting certain damage
elements to the jury. By cross-point, Williams argues the trial court erred in refusing to submit
issues to the jury regarding violation of his right to due course of the law under the Texas
Constitution. We will reverse the trial court's judgment and render judgment for the City.



BACKGROUND


 The City was a Type-B general law city until January 14, 1991, when it became
a Type-A general law city. On June 15, 1987, the city council voted to appoint Williams to the
position of chief of police. Williams and the City entered into an employment contract for
Williams to serve as police chief "for a period of five (5) years, commencing June 28, 1989, and
terminating June 28, 1994, subject, however, to prior termination as hereinafter provided." On
June 12, 1990, the same parties entered into a new contract in which Williams was to serve as
police chief "for a period of ten (10) years, commencing June 12, 1990, and terminating June 12,
2000, subject, however, to prior termination as hereinafter provided."

 On June 2, 1992, the mayor of the City notified Williams by letter that his contract
would be considered in executive session at a council meeting on June 8, 1992, unless Williams
requested an open session. Williams requested an open session, and on June 8th the council voted
to terminate Williams' employment pursuant to section nine of Williams' employment contract
which reads:



 If the City shall so terminate this agreement, the Chief shall be entitled to
compensation for 3 months from date of notice of termination. It is further agreed
that breach or evasion of the terms of this contract by either party hereto will result
in immediate and irreparable injury to the other party and will authorize recourse
to injunction and/or specific performance as well as to all other legal or equitable
remedies to which such injured party may be entitled hereunder.

 

 Notwithstanding other terms to the contrary herein, the City may terminate
the services of the Chief, immediately, without notice and without severance
compensation, upon the occurance [sic] of any one of the following:


 (a) Conviction of committing a crime of Class B Misdemeanor or above
or a Felony. 



 Williams sued the City, alleging, among other things, breach of contract for
terminating his employment. After trial, the jury returned a verdict in favor of Williams, finding
that the parties to the contract intended section nine to require "cause" before the City could
terminate the chief's employment and before three months severance pay is payable. The jury
found the City had breached the ten-year contract and awarded Williams damages. The trial court
rendered judgment on the verdict in behalf of Williams.



STANDARD OF REVIEW


 "A judgment non obstante veredicto is proper only if there is no evidence
supporting the jury's findings." Wal-Mart Stores, Inc. v. Berry, 833 S.W.2d 587, 590 (Tex.
App.--Texarkana 1992, no writ) (citations omitted); see Fenwal, Inc. v. Mencio Sec., Inc., 686
S.W.2d 660, 663 (Tex. App.--San Antonio 1985, writ ref'd n.r.e.). A trial court may render a
judgment n.o.v. "if a directed verdict would have been proper." Tex. R. Civ. P. 301. When
reviewing a trial court's denial of a motion for judgment n.o.v., the appellate court must examine
the evidence in the light most favorable to the jury's verdict, considering only the evidence and
inferences that support the verdict and disregarding all contrary evidence and inferences. Wal-Mart Stores, 833 S.W.2d at 590; Fenwal, 686 S.W.2d at 663. "If there is any probative evidence
supporting the verdict, the no evidence point must be overruled." Wal-Mart Stores, 833 S.W.2d
at 590 (citing Southern States Transp., Inc. v. State, 774 S.W.2d 639, 640 (Tex. 1989)).



DISCUSSION AND HOLDING


 In its first point of error, the City contends that the jury's finding that the parties
to the employment contract intended to require "cause" for termination renders the contract
unlawful, void and unenforceable. The City argues that unless the contract is interpreted as
terminable at will, it violates a city ordinance ("Ordinance 35") in existence at the time of the
contract and restricts the free exercise of governmental power under state law. The record reflects
that the purpose of Ordinance 35 was to create a police department headed by an appointed chief
of police to serve a one year term at the will and pleasure of the City. Williams responds that the
alleged Ordinance 35, even if validly enacted, was never properly codified and therefore cannot
be used to invalidate the employment contract. Williams further argues that, even if Ordinance
35 were valid at the time of the contract, the City is estopped from asserting the ordinance as a
defense because Williams detrimentally relied on his contract. Williams' legal position is
conflicting. On the one hand, he claims the ordinance creating the department and establishing
the office of chief of police was invalidly enacted; on the other hand, he claims a contractual right
to serve in that official capacity for ten years.

 In any event, the City is a municipal corporation. As such, its hiring and firing of
city employees is a governmental function. See City of Dallas v. Moreau, 718 S.W.2d 776, 779
(Tex. App.--Corpus Christi 1986, writ ref'd n.r.e.) (citing Kelly v. Galveston County, 520 S.W.2d
507, 512 (Tex. Civ. App.--Houston [14th Dist.] 1975, no writ) and State ex rel. Gallagher v.
Kansas City, 319 Mo. 705, 7 S.W.2d 357, 361 (1928)). The operation of a police department is
also a governmental function. See Cronen v. Nix, 611 S.W.2d 651, 653 (Tex. Civ. App.--Houston
[1st Dist.] 1980, writ ref'd n.r.e.), cert. denied, 454 U.S. 833 (1981) (citing Ellis v. City of W.
Univ. Place, 171 S.W.2d 178 (Tex. Civ. App.--Galveston), aff'd, 175 S.W.2d 396 (Tex. 1943)). 
A municipal corporation cannot, "by contract or otherwise, bind itself in such a way as to restrict
its free exercise of . . . governmental powers, nor could it abdicate its governmental functions,
even for a `reasonable time'. . . ." Clear Lake City Water Auth. v. Clear Lake Utils. Co., 549
S.W.2d 385, 391 (Tex. 1977) (citations omitted); see City of Brenham v. Brenham Water Co.,
4 S.W. 143, 152 (Tex. 1887); Sayles v. City of Abilene, 290 S.W. 239, 243 (Tex. Civ.
App.--Eastland 1926), aff'd, 295 S.W. 578 (Tex. Comm'n App. 1927, judgm't adopted). But see
Gillam v. City of Fort Worth, 287 S.W.2d 494, 499 (Tex. Civ. App.--Fort Worth 1956, writ ref'd
n.r.e.) (upholding a ten-year contract between a city and a town in which the city agreed to
furnish water to the town). As one Texas court of appeals has stated:



Functions such as the exercise of the police power by which [a municipal
corporation] promotes or protects the general welfare, comfort and convenience of
the people, . . . or enacts legislation under which the peace and good order of
society is regulated, are governmental functions over which the governing body
must retain exclusive control. These cannot be delegated nor bartered away and
any effort to do so or any contract which has the effect of passing them to others
or tying the city's hands so that it is impotent to change its policy in respect thereto
is unconstitutional and void. 



City of Crosbyton v. Texas-New Mexico Utils. Co., 157 S.W.2d 418, 420 (Tex. Civ.
App.--Amarillo 1942, writ ref'd w.o.m.) (citations omitted) (emphasis added). 

 In Clear Lake, the supreme court held that a contract of indefinite duration between
a utility and the city water authority, giving the utility the exclusive right to provide water and
sewer service to landowners within a certain 100-acre tract, was terminable at will because the
water authority could not restrict the free exercise of its governmental powers. In Brenham, the
supreme court held that a city ordinance granting a water company the exclusive privilege to
supply water to the city for twenty-five years was an invalid restriction on the municipality's
governmental functions. The court reasoned:



Municipal officers hold but for short terms, those of the city of Brenham for but
one year, and the very purpose for which short terms of office and frequent
elections are required is to leave the control of municipal affairs as near as may be
in the hands of the people; to make the municipal administration reflect, as near
as may be, the will of the public. The reasons but emphasize the necessity for
denying to a city council, or other governing body, the power, by contract or
otherwise, to disable or hinder from time to time the full and free exercise of any
power, legislative in its character, which the legislature has deemed proper to
confer upon such corporations.



Brenham, 4 S.W. at 152.

 In its order of partial summary judgment, the trial court found that the contract was
ambiguous as a matter of law. A basic tenet of contract law is that "[if] two constructions are
possible, a construction rendering the contract possible of performance will be preferred to one
that renders its performance impossible or meaningless." Temple-Eastex Inc. v. Addison Bank,
672 S.W.2d 793, 798 (Tex. 1984) (citing Republic Nat'l Bank v. Northwest Nat'l Bank, 578
S.W.2d 109, 115 (Tex. 1979)); see Cecil v. Zivley, 683 S.W.2d 853, 858 (Tex. App.--Houston
[14th Dist.] 1984, no writ). Furthermore, this Court will "adopt the construction of the contract
which comports with legality, if the contract is susceptible of more than one reasonable
interpretation." Cecil, 683 S.W.2d at 858 (citing Conte v. Greater Houston Bank, 641 S.W.2d
411 (Tex. App.--Houston [14th Dist.] 1982, writ ref'd n.r.e.)).

 Following the analysis of the foregoing courts, we conclude that the employment
contract, if interpreted to include a requirement of "cause" for termination, formed an
impermissible restraint on the city council's governmental functions which would render the
contract "void ab initio--a result the parties could not have intended." Clear Lake, 549 S.W.2d
at 391. 

 We hold as a matter of law that the only viable construction of the employment
contract is that it was terminable at will. Accordingly, the trial court erred when it denied the
City's motion for judgment n. o. v. (1) The City's first point of error is sustained. Based on this
holding, we need not address the City's second, third, fourth, and fifth points of error.

 By cross-point, Williams argues that the trial court erred in refusing to submit
certain issues to the jury regarding the violation of his right to due course of the law under the
Texas Constitution. Tex. Const. art. I, §  19. Specifically, Williams alleges that the City failed
to follow certain police department personnel policies and state statutes in terminating Williams'
employment, thereby denying him procedural due process under Article I, § 19 of the Texas
Constitution. Tex. Const. art. I, § 19. Williams seeks money damages for the alleged violations. (2)

 Termination of a person's employment is not a violation of that person's procedural
due process rights under the state constitution unless that person has a legitimate "property"
interest in his employment. See Price v. City of San Marcos, 744 S.W.2d 349, 351 (Tex.
App.--Austin 1988, writ denied), cert. denied, 488 U.S. 961 (1988); see also Hamilton v. City of
Wake Village, 593 F. Supp. 1294, 1296 (E.D. Tex. 1984). "`[A]n officer's interest in his
[appointed] position, though not `property' in the conventional sense, is a recognizable interest
for purposes of . . . due process analysis.'" Price, 744 S.W.2d at 351 (citing Tarrant Co. v.
Ashmore, 635 S.W.2d 417, 423 (Tex.), cert. denied, 459 U.S. 1038 (1982)). Once such a
property interest is shown, the deprivation of that interest requires notice and an opportunity to
be heard. However, "[t]he type of notice and hearing required varies according to the facts of the
situation." Id. 

 Williams argues that the City did not meet the notice and hearing requirements set
forth in certain police department personnel policies and in section 22.077 of the Local
Government Code. See Tex. Loc. Gov't Code Ann. § 22.077 (West 1988). We disagree.

 Regarding the police department personnel policies, Williams argues that the City
failed to comply with section 3.04.007 of the policy manual in terminating Williams' employment. 
After reading section 3.04.007, entitled "Resulting Action," it is clear that it does not apply to
Williams' termination in the instant cause. (3) Accordingly, we find no merit to Williams' argument
that the City violated his due process rights in failing to follow the termination procedures set
forth in the manual. 

 Next, Williams argues that based on section 22.077 of the Texas Local Government
Code, (4) the city council violated his rights because under subsection (a), the City did not provide
him with notice and an opportunity to be heard regarding the termination of his employment
contract, and because under subsection (b), the council did not meet the two-thirds vote
requirement.

 Williams' argument that his was terminated without sufficient notice and
opportunity to be heard is without merit. Section 22.077(b) of the Local Government Code states
that the governing body may remove an officer they have elected "at any time." Tex. Loc. Gov't
Code Ann. § 22.077 (b) (West 1988). Subsection (b) does not contain the notice and hearing
requirements of subsection (a), which pertains to termination for "cause." See Tex. Loc. Gov't
Code Ann. § 22.077 (West 1988). Furthermore, when a city official's termination is "purely a
policy decision and [does] not require the determination of adjudicative facts" he is not entitled
to a trial-type hearing. Price v. City of San Marcos, 744 S.W.2d at 351 (citation omitted). 
Williams concedes that the City notified him of the city council meeting but argues that notice was
insufficient because it merely stated that his employment contract would be "considered" and that
the removal of some city officials would be discussed. Furthermore, it is clear from the record
that the city council gave Williams, as well as several members of the public, a chance to speak
at the meeting.

 We conclude that the City gave Williams sufficient notice and opportunity to be
heard. See Price, 744 S.W.2d at 351-52 (holding that a city's termination of an appointed city
official did not violate his procedural due process rights when he was given notice of the city
council meeting where his removal would be discussed and where he could respond, because there
were no adjudicative facts to determine prior to the removal). Accordingly, we hold the City did
not violate Williams' procedural due process rights under the Texas Constitution. (5)

 We overrule Williams' cross-point. Accordingly, we reverse the trial court's
judgment and render judgment for the City that Williams take nothing.


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Reversed and Rendered

Filed: March 2, 1994

Do Not Publish

1.   Williams asserts on appeal that the City is estopped "from asserting the defense of
Ordinance 35" in arguing the contract is invalid because Williams detrimentally relied on
the contract and because the city "made no efforts to codify its ordinance . . . ." In light
of our opinion, we need not address this argument.
2.   Because we dispose of this point on other grounds, we do not address the City's
argument that a cause of action for damages does not exist for violations of rights under
the Texas Constitution.
3.   The sections immediately preceding section 3.04.007 refer to investigations of police
department employees based on written complaints by citizens or other department
members. Section 3.04.004 states that the Chief of Police is responsible for the
investigation of all complaints. Section 3.04.007 then states:


A. When the investigation is completed, the Chief of Police notifies the
accused of the result.


B. When the complaint is classified as sustained:


 1. The immediate supervisor of the accused submits a recommendation
concerning appropriate disciplinary action, which may be in the form
of:

 

 a. Oral or written reprimand.

 

 b. Temporary suspension for a set period of time.


 c. Indefinite suspension.


 d. After one (1) verbal warning, and one (1) written warning, the
employee may be dismissed. If the violation is of a very
serious nature, dismissal may occur immediately without oral
or written warnings.


 2. Final decision for all disciplinary action lies with the Chief of
Police.
4.   Section 22.077, entitled "Removal of Municipal Officers" states:


(a) The governing body of the municipality may remove a municipal officer
for incompetency, corruption, misconduct, or malfeasance in office after
providing the officer with due notice and an opportunity to be heard.


(b) If the governing body lacks confidence in a municipal officer elected by
the governing body, the governing body may remove the officer at any
time. The removal is effective only if two-thirds of the elected aldermen
vote in favor of a resolution declaring the lack of confidence.


Tex. Loc. Gov't Code Ann. § 22.077 (West 1988).
5.   Although Williams alleges in his brief that the city council did not meet the two-thirds vote requirement of section 22.077(b), he does not cite us to any part of the record
as evidence of this allegation. "The court of appeals is under no duty to make an
independent search of the statement of facts and exhibits for evidence supporting [an]
Appellant's contention, Saldana v. Garcia, 155 Tex. 242, 285 S.W.2d 197 (1955), and we
decline to do so here." Golden Villa Nursing Home, Inc. v. Smith, 674 S.W.2d 343, 351
(Tex. App.--Houston [14th Dist.] 1984, writ ref'd n.r.e.). Furthermore, Williams does not
complain that his termination was ineffective, but rather that his due process rights were
violated. Because Williams does not raise any arguments addressing the effectiveness of his
termination or any other rights affected by the allegedly defective vote, we do not address
them here.