**FENWAL, INC., Appellant,**

v.

**MENCIO SECURITY, INC., Appellee.**

No. 04–83–00234–CV.

Court of Appeals of Texas, San Antonio.

Jan. 30, 1985.

Rehearing Denied March 7, 1985.

Joel H. Klein, Klein & Klein, San Antonio, for appellant.

Robert J. Ulman, San Antonio, for appellee.

Before ESQUIVEL, CANTU and DIAL, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from a take nothing judgment in a suit on a sworn account.

Appellant Fenwal, Inc. (Fenwal) filed suit against appellee Mencio Security, Inc., d/b/a Seso Security (Seso) seeking to recover on a sworn account for equipment sold by it to Seso at the insistence and request of Seso. Seso answered by sworn denial and subsequently filed its counterclaim seeking damages as a result of Fenwal's alleged breach of a written contract, namely, a Commission Sales Representative Agreement. In a trial before a jury, the trial court permitted Seso to offer a trial amendment to supplement its counterclaim and conform its counterclaim with the evidence so as to exclude a breach of the Commission Sales Representative Agreement as originally pleaded and substitute therefor an alleged breach of a Distributor Agreement executed by the parties. The verdict returned by the jury was for Fenwal in the sum of $38,140.21 for the indebtedness owed by Seso to Fenwal for the purchase of goods, and in addition thereto, the verdict returned by the jury on the counterclaim was for Seso in the sum of $97,000.00 for its damages suffered due to acts, omissions of conduct constituting a

breach of the agreement by Fenwal. Attorney's fees were found for each party, i.e., $9,500.00 to Fenwal and $7,500.00 to Seso. Fenwal's motion for judgment non obstante veredicto was denied; the court further denied Fenwal's attorney's fees and allowed Fenwal a set off in the amount of $38,140.21 against the recovery to Seso in the total amount of $104,500.00, resulting in a net award to Seso in the amount of $66,359.79.

Fenwal brings forth eleven points of error which can be broken down in the following categories: (1) a point of error pertaining to the trial amendment; (2) points of error that the trial court erred in overruling its motion for judgment non obstante veredicto and denying its motion for new trial pertaining to Fenwal's breach; (3) points of error that the trial court erred in overruling its motion for judgment non obstante veredicto and denying its motion for new trial pertaining to Seso's resulting damages; and (4) a point of error pertaining to the admission of alleged hearsay testimony. Our initial discussion will pertain to the trial amendment.

## THE TRIAL AMENDMENT

Fenwal alleges in its point of error that the "trial court erred in allowing Seso to amend its counterclaim by trial amendment and thereby introduce, during the trial, an entirely new cause of action previously outside the pleadings and not in evidence." Fenwal contends that the trial amendment should not have been allowed because it constituted an entire repleading of Seso's counterclaim. Seso argues that the trial court correctly permitted the filing of the trial amendment because the issue of the Distributor Agreement was raised by the evidence and tried by implied consent, and further, that the trial amendment could not be said to have raised a new cause of action or to have been a surprise because Fenwal had knowledge of the Distributor Agreement and knew that the subject of Seso's counterclaim was breach of contract. Seso further argues that Fenwal waived any objection to the trial amendment because it

failed to claim surprise and to request a continuance or postponement to prepare itself to defend Seso's trial amendment. We agree with Seso and overrule Fenwal's point of error number one.

From the record we have determined that Fenwal failed to plead in its petition, upon which trial was had, a specific contract, but, during trial Fenwal introduced, as its exhibit one, through its own witness, the Distributor Agreement to support its claim for compensation from Seso. The record further establishes that the Commission Sales Representative Agreement was referred to and attached as Exhibit A to Seso's counterclaim against Fenwal for breach of contract due to Fenwal's failure to provide "technical advice and consultation." Although the Commission Sales Representative Agreement contained no such provision, it was contained in the Distributor Agreement. This defect in Seso's pleadings was initially brought to the attention of the trial court by Fenwal when it objected to Seso's cross-examination of Fenwal's witnesses on matters concerning the Distributor Agreement.

Where a defect, fault or omission in a pleading is called to the attention of the court during trial, Rule 66, Texas Rules of Civil Procedure, admonishes the court to freely allow trial amendments when the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense on the merits. *H.O. Dyer, Inc. v. Steele*, 489 S.W.2d 686, 688 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ). The allowance of a trial amendment under such conditions will not result in a reversal on appeal in the absence of a plea of surprise and a request for postponement or continuance. *Mergele v. Houston*, 436 S.W.2d 951, 956 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.). Fenwal objected to the filing of the trial amendment at the time it was offered but it did not plead surprise nor did it make a motion for continuance or postponement. Accordingly, we hold that Fenwal waived

its objection to Seso's filing of its trial amendment.

We will next consider the issue of breach of contract.

## BREACH OF CONTRACT

In its answer to special issue number three the jury found that Fenwal had "by their acts, omissions or conduct breached and/or repudiated their agreements and contracts with Seso."

 Fenwal alleges in its points of error numbers nine and ten that the trial court erred in overruling its motion for judgment non obstante veredicto and motion for new trial complaining of the sufficiency of the evidence to support the jury's findings to special issue number three. In order to sustain a motion for judgment non obstante veredicto a trial court must determine that there is no evidence having probative force upon which the jury could have made the findings relied upon. *Dodd v. Texas Farm Products Co.*, 576 S.W.2d 812, 814 (Tex.1979); *Leyva v. Pacheco*, 163 Tex. 638, 641, 358 S.W.2d 547, 550 (1962); *Burt v. Lochausen*, 151 Tex. 289, 298, 249 S.W.2d 194, 199 (1952). On appeal, we must consider the evidence in a light most favorable to the jury finding, considering only the evidence and inferences which support the verdict and rejecting the evidence and inferences which are contrary thereto. *Burt v. Lochausen*, 151 Tex. at 298, 249 S.W.2d at 199; *Murray Corp. v. Brooks*, 600 S.W.2d 897, 900 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.). Our scope of review of Fenwal's "no evidence" point ten is exactly as the scope of review hereinabove set out for Fenwal's point nine. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

Under the rules that we must follow we find the following evidence to be sufficient evidence of probative force, which with proper inferences arising therefrom will reasonably support the jury's answer to special issue number three.

The provision of the Distributor Agreement pertinent to the discussion of this portion of the appeal is paragraph ten. It reads as follows:

10. Assistance in Designing

The parties hereto acknowledge and agree that the Products include specialized systems which are not of uniform design and which will reflect the particular needs of individual customers of the Distributor. *Fenwal hereby agrees to give any and all reasonable assistance as may be requested by the Distributor at any time and from time to time in connection with the designing and planning of systems for any customers of the Distributor. The Distributor, on the other hand, agrees to furnish Fenwal in writing complete and accurate process, dimensional, and other technical information* as well as information needed for insurance approvals *which Fenwal will need in order to design the aforesaid systems for the Distributor's customers.* [Emphasis ours.]

While the Distributor Agreement was in effect and as a result of a successful bid, Seso commenced to physically install a fire suppression system at Kelly Air Force Base some time in August of 1979. The system was a Halon fire suppression system which called for the use of equipment and products designed and manufactured by Fenwal. It was to be installed in a facility at Kelly Air Force Base in order to extinguish potential fire and thereby protect some calibration equipment. It was meant to extinguish a fire in the room or the area by discharging an odorless, colorless gas known as Halon stored in strategically located containers as a liquid under pressure. The Halon could be discharged by smoke detectors; or when the temperature in the room or area near a thermal device would reach a certain level; or when several ultraviolet detectors situated in the room or area detected flames; or, by an individual pulling a switch, similar to an ordinary fire alarm, at any manual pull station situated in the room or area. Regardless of whatever manner initiated the discharge of the Halon, the Air Force insisted that the sequence of events, from initiation to final discharge or "dumping"

of the Halon, be such that the sequence could be aborted by a "dead man switch" being activated by any individual. This could only be accomplished if in all instances of initiation a yellow light flashed at strategically located places in the room or area and the simultaneous ringing of a bell to warn the persons in the area that a discharge or "dumping" of the Halon was about to occur. A person could then push the "dead man switch" and prevent the discharge of the Halon. This abortion sequence, insofar as it applied to the pull stations, was testified to by Seso as being unusual in nature; that all previous Fenwal systems were not designed to meet this abortion requirement when the discharge of the Halon was initiated at a pull station.

Some time in October 1979 Seso discovered that the signal circuitry as originally designed when the installation of the system began did not meet the pull station abortion requirements of the Air Force. There is evidence that Fenwal, though requested, failed to give Seso any assistance in the redesigning of the system to comply with the Air Force's abortion requirements as it concerned the pull station procedures and sequence of events; that Fenwal's refusal to assist in a solution of the problem resulted in Seso retaining TCT, an electronic engineering and consulting firm, for assistance. A workable solution and design was reached with the assistance of TCT and Seso was able to install the circuitry system as per the requirements set by the Air Force. It was further testified that in order to install the TCT redesigned system additional conduit and wiring and additional man-hours than had originally been anticipated were required.

■ We, therefore, hold that the trial court did not err in overruling Fenwal's motion for judgment non obstante veredicto, and it did not err in denying its motion for new trial. Accordingly, Fenwal's points nine and ten are overruled.

We now proceed to consider the issue of damages.

## DAMAGES

In its answer to special issue number four the jury found that $97,000.00 would reasonably compensate Seso for its damages or financial loss resulting "from the occurrence in question and under the circumstances made the basis of this suit."

There is further evidence that Fenwal refused to provide equipment and products to Seso from May 1980 to May 1981 as provided by the terms of the Distributor Agreement.

■ The following points of error by Fenwal refer to the jury's answer to question number four:

### Points of Error

\* \* \* \* \* \*

2. The Trial Court erred in overruling Appellant's Motion for Judgment non obstante veredicto because the jury's finding in answer to Question No. 4 is against the great weight and preponderance of the evidence.

3. The Trial Court erred in overruling Appellant's Motion for Judgment non obstante veredicto because there is no evidence that Appellee suffered any damage or financial loss as a result of Appellant's acts or failure to act.

4. The Trial Court erred in overruling Appellant's Motion for New Trial because the evidence at trial was insufficient to support the jury's finding to Question No. 4 that Defendant was harmed or damaged in the sum of $97,000.00.

5. The Trial Court erred in overruling Appellant's Motion for New Trial because, in view of the evidence, the finding of the jury in response to Question No. 4 was clearly excessive and against the great weight and preponderance of the evidence.

\* \* \* \* \* \*

7. The Trial Court erred in overruling Appellant's Motion for New Trial because as a matter of law the evidence

was not sufficient to support the jury's answer to Question No. 4.

8. The Trial Court erred in overruling Appellant's Motion for Judgment non obstante veredicto because, as a matter of law, the evidence was not sufficient to support the jury's answer to Question No. 4.

We therefore hold that Fenwal's points of error numbers two, three, four, seven and eight are no evidence points or points of error complaining of the legal insufficiency of the evidence.[1] Our scope of review of these points of error will therefore be as set out in our discussion of points nine and ten.

In regards to the damages caused by Seso's breach of the Distributor Agreement, the witness Mencio and the witness Duda both testified that Seso found it necessary to obtain the services of TCT. Mencio testified that Seso paid TCT $2,500.00 for its services but had they received the requested assistance from Fenwal, under the agreement Fenwal's fee would have been $1,000.00. Mencio further testified that because of the problem presented by the Air Force's unusual requirement he in effect had to do the rewiring of the system twice which meant the use of additional supplies and hardware which cost him $10,-680.00; that he had to rent a lift for the proper installation of the extra conduits at a cost of $2,116.00; and that it took approximately 1,200 extra man hours to rerun all of the extra conduit at an additional cost of $15,712.00 to Seso; for a total expense "in the neighborhood of $31,000.00."

In regards to the damages caused by Fenwal's refusal to provide Seso with any requested material during the year May 1980 to May 1981 when the Distributor Agreement was finally declared terminated by Fenwal the following was testified to by Mencio: that he was unable to finish a simultaneous installation of a Halon system at the Levi Straus project where the contract price was "in the neighborhood of $9,000.00" and that the "profit margin was $3,600.00"; that Seso was "negotiating or working on entering" into contracts with other potential customers to install Halon systems; that in his opinion Seso would do "in the neighborhood of $300,000.00 in gross sales the next year"; that based on his analysis of market conditions in his opinion the minimum profit that Seso would achieve on the $300,000.00 in sales or gross revenue "would be in the neighborhood of about I guess $60,000.00"; that for the year following May 31, 1981, Seso would be "looking at a profit of about $72,000.00," based on his projections of gross revenue "in excess of $300,000.00"; that Seso lost a contract to sell equipment at Laughlin Air Force Base as a result of which Seso would have made a profit of $2,000.00.

■■■ Under the rules that we must follow we find the evidence above mentioned to be insufficient and of no probative force to sustain the findings of the jury in its answer to special issue number four.

The statements by Mencio regarding Seso's lost profits were not based on fact, figures or data of any kind from which profits could be ascertained with a reasonable degree of certainty and exactness. *See Van Sickle v. Clark*, 510 S.W.2d 664, 669 (Tex.Civ.App.—Fort Worth 1974, no writ); *Village Square, Ltd. v. Barton*, 660 S.W.2d 556, 560 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). We, therefore, hold that an insufficient basis was shown for awarding damages to Seso for lost profits

---

1. This is true of Fenwal's points of error numbers seven and eight despite its use of the words "as a matter of law." When the complaining party's opponent had the burden on the issue, the point raising legal insufficiency is properly styled "no evidence." When the complaining party had the burden on the issue and it was answered adversely, the point should be styled as "a matter of law" point because the fact finder's failure to find a fact need not be supported by the evidence. Cornelius, *Appellate Review of Sufficiency of the Evidence Challenges in Civil and Criminal Cases*, 46 TEX.B.J. 439, 440 (1983). Points of error numbers two and four are also "no evidence" points of error due to the nature of our standard of review of a point of error complaining of the denial of a motion for judgment non obstante veredicto. *Burt v. Lochausen*, 151 Tex. 289, 298, 249 S.W.2d 194, 199 (1952).

during May 1980 to May 1981, and for the following year.

■ Additionally, Seso did not discharge its burden of showing the correct measure of damages in regards to the damages caused by the failure of Fenwal to provide advice and assistance in the designing of the Halon system at the Kelly project. It is undisputed that Seso would have suffered additional costs or expenses incidental to the completion of the job because of the Air Force's unusual request concerning the circuitry regardless of Fenwal's breach. Seso failed to demonstrate that the costs as testified to were such costs, less what it would have cost them had Fenwal performed. We, therefore, hold that Seso failed to discharge its burden of showing the correct measure of damages in the Kelly project.

■ Having held that Seso has failed to prove its damages under its counterclaim, we further hold that it is not entitled to attorney's fees under its claim. *Chastain v. Cooper & Reed,* 152 Tex. 322, 332, 257 S.W.2d 422, 428 (Tex.1953); *see* TEX.REV. CIV.STAT.ANN. art. 2226 (Vernon Supp. 1984). Our holding on the discussed points of error are dispositive of this appeal and make it unnecessary for us to determine Fenwal's remaining points of error.

Accordingly, we reverse that portion of the trial court's judgment awarding damages to Seso on its counterclaim in the sum of $97,000.00 plus $7,500.00 attorney's fees and render judgment for Fenwal in the amount of $38,140.21 plus attorney's fees in the sum of $9,500.00 against Seso.[2]

---

**2.** The court denied Fenwal its attorney's fees based on the fact that it obtained a judgment less than Seso. *See L.Q. Motor Inns, Inc. v. Boysen,* 503 S.W.2d 411 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.) (attorney's fees not recoverable by plaintiff who recovers damages less than recovered by defendant on counterclaim).