

# NUMBER 13-20-00195-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JAIME MARTINEZ**
**D/B/A IMJ TRUCK REPAIR,**                                              **Appellant,**

**v.**

**HAULING 365, LLC,**                                              **Appellee.**

---

### On appeal from the County Court at Law No. 10
### of Bexar County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Hinojosa, Tijerina, and Silva**
**Memorandum Opinion by Justice Hinojosa**

This is an appeal from a default judgment on a negligence and breach of contract claim regarding a transport truck repair. By three issues, appellant Jaime Martinez d/b/a IMJ Truck Repair, argues that: (1) the trial court abused its discretion when it denied his

motion for new trial under *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939); (2) the evidence to support the judgment was legally and factually insufficient; and (3) the award of appellee Hauling 365, LLC's attorney's fees was erroneous. We affirm in part, remand in part, and reverse in part.

## I.  BACKGROUND[1]

Hauling 365, a trucking and transport company, filed suit on October 15, 2019, alleging breach of contract and negligence against Martinez, a mechanic shop. According to Hauling 365, Martinez failed to competently repair an engine in one of Hauling 365's service trucks.

Martinez was served with citation on November 19, 2019. On January 9, 2020, Hauling 365 filed a motion for default judgment. In its motion, Hauling 365 alleged that it was entitled to judgment as Martinez "failed to appear or file an answer within the time allowed by law and has wholly made default." After a hearing, the trial court granted the default judgment on January 9, 2020,[2] and awarded Hauling 365 $99,586.48 in economic damages and $2,400 in attorney's fees.

Martinez filed a motion for new trial on February 10, 2020. In his motion, Martinez requested a new trial because he claimed his failure to timely file an answer was the result of a mistake rather than his intentional or conscious indifference. In an affidavit, Martinez

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the San Antonio Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.

[2] It appears that the motion for default judgment and its related hearing occurred on the same day—January 9, 2020.

explained how he thought his insurance company was handling his defense:

1. I was served with service of process of the above-styled and -numbered lawsuit on or about November 19, 2019. I reviewed all the papers with which I was served and immediately contacted my insurance agent, Steve Flores of 1st Patriot Risk Management, LLC, . . . as I understood the events as alleged in the petition to be covered by my existing insurance policy. Mr. Flores asked that I send him a copy of the lawsuit, and I promptly obliged.

2. Mr. Flores subsequently provided me with a questionnaire regarding my coverage, which I timely completed and submitted.

3. Subsequently, I received a phone call from my insurer and provided a telephonic statement addressing the allegations in the petition.

4. Sometime during the week of January 13, 2020, I received a copy of the Notice of Judgment, after which I immediately contacted Mr. Flores to inquire how a default judgment had be [sic] obtained against me when I was led to believe my insurer was mounting my defense. Mr. Flores indicated he would inquire with the insurer.

5. I failed to receive any subsequent communication from Mr. Flores or my insurer until on or about January 28, 2020, when I received notice from my insurer that coverage was being denied. Attached hereto as Exhibit A-1 is a copy of this notice.

6. At no time prior to January 28, 2020, was I informed, either by Mr. Flores or my insurer, that the possibility existed that coverage would be denied or otherwise be unavailable, or that I, on my accord, should arrange for an answer to be filed.

In the motion for new trial, Martinez also alleged that: (1) Hauling 365 shared a proportionate share of fault because it allowed its truck to overheat after Martinez's initial repair of the engine, causing further damage; (2) the evidence to support a $99,586.48 damages award was legally and factually insufficient; (3) Hauling 365 was not entitled to attorney's fees because it did not demonstrate proper presentment under Texas Civil Practices & Remedies Code § 38.002; and (4) Martinez was wrongfully sued in his

individual capacity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.002.

After a hearing, the trial court orally denied Martinez's motion on March 6, 2020. The record of this hearing is not before us. Hauling 365 submitted a proposed order to the court denying the motion for new trial, which included findings regarding Martinez's credibility as a witness during the hearing on the motion for new trial:

> The Court FINDS that the Oral Testimony at the hearing of Defendant, Jaime Martinez, contradicted the Affidavit submitted by the Defendant in its Motion. The Court [f]inds that Jaime Martinez's testimony that he did not understand the affidavit, or the contents contained in it is compelling. As such, the Court hereby finds and ORDERS that the affidavit of Jaime Martinez, attached to Defendant's Motion as Exhibit A, is striken [sic] as inadmissible.
>
> The Court [f]inds that the oral testimony of Jaime Martinez is sufficient for the Court to admit Exhibit A-1 into evidence, the Letter from Colony Special.[3] However, the Court admits said letter for the sole purpose of proving that a letter was received by Defendant from Colony Special. Because Defendant cannot read the Letter and cannot distinguish it from any other letter in the English language, the Court Orders this limit admissibility [sic].
>
> The Court further finds that there is no admissible evidence presented at the hearing, for which the Defendant could prevail. The Court also finds that the Defendant's actions as testified to, by him, do not evidence accident or mistake. Therefore, the [C]ourt finds the Defendant's Motion for New Trial should be DENIED.
>
> The Judgment remains final.

Martinez objected to this proposed order. While maintaining that the trial court abused its discretion in denying his right to a new trial, Martinez submitted an alternative proposed order that simply denied the motion for new trial and made no specific findings.

---

[3] The Colony Special is Martinez's insurance company.

4

The trial court signed Hauling 365's order instead. Martinez appealed.[4]

## II.     THE MOTION FOR NEW TRIAL

By his first issue, Martinez argues the trial court abused its discretion when it denied his motion for new trial under *Craddock*. *See* 133 S.W.2d at 126.

### A.     Applicable Law & Standard of Review

Under *Craddock,* a trial court must set aside a default judgment if (1) "the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident"; (2) "the motion for a new trial sets up a meritorious defense"; and (3) granting the motion "will occasion no delay or otherwise work an injury to the plaintiff." *Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 309 (Tex. 2012) (quoting *Craddock*, 133 S.W.2d at 126).

Appellate courts review a trial court's decision denying a motion for new trial under an abuse of discretion standard of review. *See Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994). "When a defaulting party moving for new trial meets all three elements of the *Craddock* test, then a trial court abuses its discretion if it fails to grant a new trial." *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

---

[4] Martinez filed a notice of appeal on March 30, 2020. After Martinez had filed his appellate brief with this Court, Hauling 365 filed a request for findings of fact and conclusions of law at the trial court level on August 4, 2020. Martinez objected to the untimeliness of this filing that same day. The trial court denied the request on August 12, 2020. We do not consider these filings as they were not before the trial court when it ruled on Martinez's motion for new trial, the issue on appeal.

**B.     First *Craddock* Element: No Conscious Indifference**

The first element of *Craddock* is whether Martinez failed to answer due to conscious indifference or mistake. *See Craddock*, 133 S.W.2d at 126. The critical question in this inquiry is, "Why did the defendant not appear?" *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012) (quoting *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 574) (Tex. 2006) (per curiam)). To determine if a defendant met the first element of *Craddock*, we look to the defendant's knowledge and acts. *Milestone*, 388 S.W.3d at 309. "The absence of an intentional failure to answer rather than a real excuse for not answering is the controlling fact." *Id*. at 310 (citing *Craddock,* 133 S.W.2d at 125). A defendant meets this first element "when its factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted by the plaintiff." *Id*. "An excuse need not be a good one to suffice." *Fidelity*, 186 S.W.3d at 576.

Here, Martinez testified by affidavit that he reviewed the lawsuit and immediately contacted his insurance agent when he was served on November 19, 2019. According to Martinez, his agent requested a copy of the lawsuit. Martinez forwarded a copy of the petition and then completed a questionnaire regarding coverage. Martinez then spoke on the phone with his insurer regarding the petition's allegations. Martinez claims that, after this activity, he assumed his insurance company was "mounting a defense" on his behalf. On January 13, 2020, when he received the notice of judgment against him in the amount of $99,586.48 in economic damages and $2,400 in attorney's fees, he immediately called his insurance agent. The agent notified Martinez that he would call the insurance

6

company. On January 28, 2020, Martinez finally received written notice from the insurance company denying his request for legal representation.

"Generally, when a party relies on an agent or representative to file an answer, the party must establish that the failure to answer was not intentional or the result of conscious indifference of either the party or the agent." *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 391 (Tex. 1993)*.* Martinez's mistaken belief that his insurance company was handling his lawsuit after forwarding them the petition and speaking with both his agent and the company did not show intent to ignore the suit. *See id.*; *Strackbein v. Prewitt*, 671 S.W.2d 37, 39 (Tex. 1984) (concluding that defendant was not consciously indifferent when he believed his attorney was handling the lawsuit after he forwarded petition to the attorney's office, and the attorney's office then misplaced documents); *see also Hidalgo Cty. Emergency Serv. Found. v. Mejia*, No. 13-16-00576-CV, 2018 WL 2731881, at *4 (Tex. App.—Corpus Christi–Edinburg June 7, 2018, pet. denied) (mem. op.) (holding there was no conscious indifference when a lawsuit went unanswered because of a turnover in staff at the insurance company after defendant forwarded petition). Here, the record shows the insurance company was reviewing its policy to determine legal coverage, and the timing on its decision negatively impacted Martinez.[5] Considering both Martinez and the insurance company's "knowledge and acts," it appears

---

[5] We disagree with Hauling 365 that *Memorial Hospital System v. Fisher Insurance Agency* applies here. *See* 835 S.W.2d 645, 652 (Tex. App.—Houston [14th Dist.] 1992, no writ), *disapproved of by Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005). In *Fisher*, Fisher forwarded a copy of a lawsuit to its insurer with no follow-up. *See id.* It did not speak with its insurance agent, complete a questionnaire, or speak with a representative of the insurance company like Martinez did. In addition, there is no record that the insurance company "failed to represent its interest . . .", unlike in this case where we have a letter from Colony Specialty explaining why coverage was denied. *See id.* Accordingly, we conclude that the two cases are distinguishable. *See id.*

at first blush that they did not act with conscious indifference. *Milestone*, 388 S.W.3d at 309.

Hauling 365, however, argues that it controverted Martinez's factual assertions regarding the first *Craddock* element. *See Milestone*, 388 S.W.3d at 309–10 (noting that a defendant meets the first element "when its factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant *and the factual assertions are not controverted by the plaintiff*") (emphasis added). Hauling 365's brief asserts that Martinez's affidavit contradicted his live testimony and his attached exhibits. The brief states, for example, that "counsel for [Hauling 365] testified that he contacted Martinez directly several times in order to avoid getting a default judgment." It also states that Martinez's affidavit had so many "inconsistencies that the County Court called Martinez as a witness." Hauling 365 further claims that "Martinez's insurance policy was of such a nature that no person could honestly believe that it covered the allegations made by" Hauling 365.

None of these counter-assertions, however, are in our record: there is no counter-affidavit from Hauling 365 and there are no findings of fact or conclusions of law, either. *See* TEX. R. CIV. P. 297. Further, there is no reporter's record of the hearing on the motion for new trial. And, although Hauling 365 urges us to look at the trial court findings in the final order, these are improper under Texas Rule of Civil Procedure 299a. *See* TEX. R. CIV. P. 299a (providing that "[f]indings of fact shall not be recited in a judgment"); *see also Cadle Co. v. Davis*, No. 04-09-00763-CV, 2010 WL 554389, at *6 (Tex. App.—San Antonio Dec. 29, 2019, pet. denied) (mem. op.) ("Although the statement is a factual

assertion, findings of fact in judgments are forbidden and may not be considered on appeal.").

When a record is incomplete, though, a presumption arises that the missing portions of the reporter's record support the trial court's judgment. *See Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002) (per curiam) (noting that Texas Rule of Appellate Procedure 34.6 requires appellate courts to affirm the trial court's judgment when a record is partially missing). In a case where the facts regarding conscious indifference are contested, "it is the duty of the court, as the fact finder at a hearing on motion for new trial, to ascertain the true facts surrounding the default circumstances." *Roman v. Ramirez*, 573 S.W.3d 341, 352 (Tex. App.—El Paso 2019, pet. denied) (quoting *Harmon Truck Lines, Inc. v. Steele*, 836 S.W.2d 262, 265 (Tex. App.—Texarkana 1992, writ dism'd)). The trial court is "the sole judge of the credibility of the witnesses and the weight to be given to their testimony." *Id*. We must therefore defer to the trial court in this matter. *See id*. (noting that the appellate court deferred to the trial court's "implied finding" controverting the plaintiff's assertions that they did not act with conscious indifference).

Accordingly, we find that Martinez did not meet the first element of *Craddock* because the trial court must have impliedly found that his statements regarding his conscious indifference were controverted. *See Milestone*, 388 S.W.3d at 309. Because we hold that the first element of the *Craddock* test was not satisfied, we do not reach the other two elements. *Craddock*, 133 S.W.2d at 126. We overrule Martinez's first issue.

### III.   SUFFICIENCY OF THE EVIDENCE

By his second issue, Martinez argues that the evidence to support the judgment

for lost profit damages was legally and factually insufficient.

## A. Standard of Review & Applicable Law

To determine if legally sufficient evidence supports a judgment, we "view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). Evidence of a vital fact's existence is legally insufficient if (1) no evidence in the record supports it; (2) rules of law or of evidence bar the court from giving weight to the only evidence offered to prove it; (3) there is no more than a scintilla of supporting evidence; or (4) the evidence conclusively establishes the converse. *See id.* at 810. When reviewing for factual sufficiency, we consider and weigh all of the pertinent evidence, and we will set the finding aside only if "the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016). When reviewing the evidence for legal or for factual sufficiency, we defer to the fact-finder's reasonable credibility determinations. *See City of Keller*, 168 S.W.3d at 820.

"Recovery for lost profits does not require that the loss be susceptible of exact calculation." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). The injured party, however, must do more than demonstrate that it suffered some lost profits. *See id.* "The amount of the loss must be shown by competent evidence with reasonable certainty." *Id.* (citing *White v. Sw. Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983)). "What constitutes reasonably certain evidence of lost profits is a fact intensive determination."

10

*Id.* "As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Id*. "Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates." *Id*.

**B.    Analysis**

Martinez argues that "the only evidence Hauling 365 offered on lost profits came through the testimony of its principal, Jose Padilla." Padilla's testimony regarding Hauling 365's alleged lost profits follows:

Counsel:    And so, you have gone back and you looked at your corporate records; is that correct?

Padilla:    Yes.

Counsel:    Have you been able to extrapolate what amount of revenue your company receives—or received in the past on that truck per week?

Padilla:    It would be about [$]2,500 I lost. The truck makes about $5,000 a week total.

Counsel:    So, $5,000 is a revenue. You are saying the $2,500 per week is the lost profit on the truck?

Padilla:    That's correct.

Counsel:    And so, if you multiply 26 weeks times $2,500—

Padilla:    It was $65,000.

Martinez argues that Padilla's testimony regarding Hauling 365's lost profits is "purely conjectural or speculative" and "too uncertain to be ascertained and cannot be recovered." We agree. Padilla's testimony is similar to the testimony in *Fenwal, Inc. v. Mencio Sec., Inc.*, 686 S.W.2d 660, 665 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.).

11

There, the testimony from trial established that the plaintiff's company would do "in the neighborhood of $300,000.00 in gross sales the next year"; would realize a minimum profit "in the neighborhood of about I guess $60,000.00"; and "would be 'looking at a profit of about $72,000.00'" for the year after that. *Id.* at 665. The San Antonio Court of Appeals held that this testimony was "insufficient and of no probative force" to sustain a lost profits award. *Id*. The court elaborated that these "lost profits were not based on fact, figures or data of any kind from which profits could be ascertained with a reasonable degree of certainty and exactness." *Id*.

We reach the same conclusion here. Padilla's testimony is devoid of fact, figures, or data regarding profits—it is speculative and based on a "look" at "corporate records." *See id*. Further, his testimony at the motion for default judgment hearing fails to explain why he left this truck in Martinez's care for twenty-six weeks, or over six months, without retrieving his vehicle earlier.[6] He also does not show any evidence that his business had the same demand throughout that time period such that the truck would be in constant use.[7]

---

[6] Padilla's attorney stated on the record that Martinez allegedly sent the truck to a third-party, Santex Trucking, for repairs when Martinez "couldn't figure out what the problem was." The truck apparently stayed at Santex Trucking for months. However, attorney commentary is not testimony, and we cannot consider this. *See Warrilow v. Norrell*, 791 S.W.2d 515, 523–24 (Tex. App.—Corpus Christi–Edinburg 1989, writ denied). "The practice of attorneys furnishing from their own lips and on their own oaths the controlling testimony for their client is one not to be condoned . . . ." *Id.* (quoting *Ferraro v. Taylor*, 197 Minn. 5, 265 N.W. 829, 833 (1936)). Further, even if we could consider this statement, it does not explain why Padilla did not make efforts to retrieve his truck more promptly.

[7] Finally, when Padilla was asked for the total amount of damages he was seeking from Martinez, he stated $99,586.48. The court ultimately awarded this amount in the default judgment. It is unclear from the record, though, how this sum was derived. Padilla requested $65,000 in lost profits. He further testified that he paid Martinez $3,000 for labor and $18,000 in parts for a total of $21,000, and that he had an estimate from Santex Truck Repair that a full engine repair would be $28,144.94. The sum total of these amounts is $114,144.94, not $99,586.48.

Viewing the evidence in the light most favorable to the trial court's judgment, crediting favorable evidence where reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, we find this evidence of lost profits to be legally insufficient. *See City of Keller*, 168 S.W.3d at 807. Further, this evidence is so contrary to the overwhelming weight of all the evidence that it should be set aside. *See Gardiner*, 505 S.W.3d at 615.

We find the *Holt Atherton Industries, Inc. v. Heine* case to be instructive on this matter:

> After a default judgment is granted, the trial court must hear evidence of unliquidated damages. TEX. R. CIV. P. 243. However, as a practical matter, in an uncontested hearing, evidence of unliquidated damages is often not fully developed. This is particularly true when the trial judge expresses a willingness to enter judgment on the evidence that has been presented. Therefore, when an appellate court sustains a no evidence point after an *uncontested* hearing on unliquidated damages following a no-answer default judgment, the appropriate disposition is a remand for a new trial on the issue of unliquidated damages.

835 S.W.2d at 86. We sustain this issue.

## IV. ATTORNEY'S FEES

By his third issue, Martinez argues that Hauling 365 was not entitled to attorney's fees because it did not "present the claim to [Martinez] prior to filing suit as required by Texas Civil Practice and Remedies Code § 38.002." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.002. Section 38.002 provides that a claimant must do the following to be entitled to attorney's fees:

(1)      the claimant must be represented by an attorney;

(2)      the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and

13

> (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.

*Id.* In other words, to recover attorney's fees under Chapter 38, the claimant must plead and prove that he "presented" his claim to the opposing party and that the amount owed was not tendered within thirty days of presentment. *See id.* "The purpose of the presentment requirement is to allow the person against whom a claim is asserted an opportunity to pay within thirty days of receiving notice of the claim, without incurring an obligation for attorney's fees." *Llanes v. Davila*, 133 S.W.3d 635, 641 (Tex. App.—Corpus Christi–Edinburg 2003, pet. denied).

Hauling 365, citing Texas Rule of Civil Procedure 93, responds that "presentment of a claim is a statutory element that is presumed once the pleadings at issue 'set up' the issue of presentment." Hauling 365 contends that "Martinez was clearly aware that [Hauling 365] sought attorney's fees from it by the nature of the causes of action claimed and the attorney's fees sought." "However, neither the filing of a suit, nor the allegation of a demand in the pleadings can alone constitute presentment of a claim or a demand that the claim be paid." *Id.*; *Carr v. Austin Forty*, 744 S.W.2d 267, 271 (Tex. App.—Austin 1987, writ denied). Although Hauling 365 requested attorney's fees in its original petition, it did not plead presentment and it offered no evidence of presentment at the default hearing.[8] Accordingly, Hauling 365 was not entitled to recover attorney's fees. *See Carr*,

---

[8] In the alternative, Hauling 365 argues that Martinez should have filed a verified plea denying that presentment had occurred. This would only be true if, in its original petition, Hauling 365 asserted that it had "performed all prerequisites and conditions precedent to recovery under the aforesaid contract." *Llanes v. Davila*, 133 S.W.3d 635, 641 (Tex. App.—Corpus Christi–Edinburg 2003, pet. denied). Hauling 365 did not plead this, though. Therefore, we do not address this point. *See* TEX. R. APP. P. 47.1.

14

744 S.W.2d at 271. We sustain this issue.

## V. CONCLUSION

We affirm the trial court's judgment on the motion for new trial. We reverse and render a take-nothing judgment on attorney's fees. We remand the issue of lost profits to the trial court for further proceedings consistent with this opinion.

LETICIA HINOJOSA
Justice

Delivered and filed on the
17th day of February, 2022.